ARIOSTO CLEMENTE, et al., Plaintiffs, v. THE GREYHOUND CORPORATION, a Delaware corporation, Defendant.

(*October* 28, 1959.)

STIFTEL, J., sitting.

*Ernest S. Wilson, Jr.* (of Morford, Young and Conaway) and *Joseph A. L. Errigo* for plaintiffs.

*Henry R. Horsey* (of Berl, Potter and Anderson) for defendant.

Superior Court for New Castle County, No. 1142, Civil Action, 1958.

STIFTEL, J.:

Motion to dismiss complaint pursuant to *Superior Court Rule* 12(b) (6), *Del. C. Ann.*

The ground for the motion is that the complaint fails to state a claim for declaratory judgment for the following reasons: (1) that the complaint fails to plead a controversy within the meaning of the declaratory judgment statute (10 *Del. Code* § 6501); (2) that an adequate remedy exists at law; (3) that the complaint seeks judgment upon an oral contract and raises serious disputes as to questions of fact; (4) that the statute's purpose will not be served by declaratory judgment. Defendant also asks the Court to dismiss the complaint as to both corporate plaintiffs, claiming they are improper party plaintiffs.

On April 7, 1952, individual plaintiffs, as copartners, entered into a written contract with the Pennsylvania Greyhound Lines, Inc., now known as the Greyhound Corporation. The contract recited that the individual plaintiffs (hereinafter called "Clemente") were to purchase land and a building, were to alter and expand said building in accordance with plans which were to be approved by Greyhound, for the purpose of furnishing rest, eating and sanitary facilities for the accommodation of the passengers, patrons and employees of Greyhound.

The contract further recited that it was the desire of the parties that certain buses of Greyhound would stop at Clemente's station in order to permit the passengers, patrons and employees of Greyhound to use these facilities.

Clemente agreed that the alterations would start 30 days after the execution of the agreement and that the facilities

would be completed 150 days thereafter; and agreed to operate a modern, attractive lunch service and to provide properly cooked food for the primary accommodation of the passengers, patrons and employees of Greyhound, the prices and quantity of these foods to meet the approval of Greyhound.

Clemente was to give Greyhound preferential treatment in the accommodation of its passengers, patrons and employees, so that the buses could leave on scheduled times. At the same time, Greyhound was not to unreasonably interfere with the efforts of Clemente to obtain revenue from other sources.

Clemente further agreed to provide and maintain suitable and adequate driveway and parking space in accordance with the plans to be approved by Greyhound so that the buses could have free access to the station. Clemente also agreed to maintain sufficient toilet facilities to be approved by Greyhound.

Paragraph 6 of said agreement provided as follows:

"6. Clemente will operate the said building and the business conducted therein in a manner in all respects satisfactory to Greyhound, and at its own cost and expense keep and maintain the exterior and interior of the building in constant good order, repair and condition, and paint and repaint the same from time to time as same becomes necessary. Also Clemente will at all times keep the restaurant, lunch room, kitchen and toilet rooms and all facilities and fixtures therein thoroughly clean and sanitary; that Clemente will furnish an ample supply of hot and cold water in the toilet rooms, also soap, towels and toilet tissue. Further, Clemente shall provide the necessary heat and ventilation when required to keep the said restaurant, lunch room and toilet rooms in a comfortable condition, and will furnish the necessary electric current and lamps and keep the said premises properly lighted, all to the entire satisfaction of Greyhound."

In Paragraph 7, Clemente agreed not to permit said station to be used by any bus line or bus lines which competed

with Greyhound without the written consent of Greyhound and that they would not operate or establish, or aid or assist in the operation or establishment of any station to be used by any bus line other than Greyhound within a distance of 5 miles in each direction from the Greyhound station. Clemente was to carry insurance for any liability and such insurance and insurance company were to be approved by Greyhound.

This agreement was to remain in full force and effect for 10 years from the 15th day of July, 1952. The agreement could be terminated by either of the parties prior to the 15th day of July, 1962, for specified reasons set out in the contract.

By Paragraph 11, Clemente was forbidden to sell, assign or transfer the agreement or any rights and privileges thereunder without the written consent of Greyhound.

The written language of the contract recites the obligations of Clemente. Little or nothing is mentioned of any obligations of Greyhound under the contract.

The complaint, which incorporates the contract, alleges that the Clementes, as co-partners, transacted their business operations under the contract with the defendant, through two corporations, namely, Clemente Cafeteria, Inc. and Clemente, Inc., which were entirely controlled by the Clementes.

The complaint also alleges that the contract was entered into in consideration of "and upon the carrying out of certain promises and undertakings by, and upon the giving of certain assurances by Greyhound", namely, that if plaintiffs performed and fulfilled the terms and conditions of the contract and so long as Greyhound continued to operate on Routes 13 and 40, Greyhound would cause Greyhound passenger buses passing the station, with the exception of certain chartered buses, to stop at the station for a sufficient length of time to permit bus passengers to disembark and to buy food and use the facilities and services provided for them by the station. It is alleged further

in the complaint that the written contract could not have been carried out so as to give effect to the purpose and intent of the parties without legal recognition being given to the promises of Greyhound as dependent covenants to the written contract.

Plaintiffs also contend that the promises, undertakings and assurances of Greyhound constitute: (1) Greyhound's express contractual obligations to plaintiffs; (2) Greyhound's contractual obligations to plaintiffs which are implied in fact; and (3) Greyhound's contractual obligations to plaintiffs which are implied in law.

Plaintiffs contend that they have an action in law against Greyhound based on the doctrine of promissory estoppel growing out of the performances of Clemente in relation to the contract and operation of the station on the assurances of defendant.

Clemente indicates willingness to continue in the performance of the contract and the fact that they have efficiently operated the station under the contract. Plaintiffs claim they are dependent on the patronage and business of Greyhound and that the entire facilities were provided, designed and operated for the use and service of the Greyhound passengers. The complaint states that Greyhound has made it impossible for its passengers to use the restaurant or other facilities in keeping with the purpose and intent of the parties, and plaintiffs have refused to make their services available to any other bus company competing with Greyhound in accordance with the terms of the contract allegedly forbidding this.

The complaint further alleges that beginning in December, 1957, Greyhound, without first obtaining consent of Clemente, eliminated the station as a stop for a large number of its scheduled passenger buses which travel along Routes 13 and 40, and further that it has made it impossible for a large group of passengers on stopping to use the eating facilities because of the arbitrary short stops made by Greyhound buses at the station.

Plaintiffs brought this action for declaratory judgment to determine (1) What are the rights and obligations of Greyhound in its contractual relationship with Clemente as to stopping, curtailing or limiting the stopping, or discontinuance of the stopping of its buses at the Clemente station, during the term of the contract, and during such time as Greyhound continues to use U. S. Route 13 and/or U. S. Route 40 as routes for its passenger buses?

(2) Whether there has been a total breach by Greyhound of its contractual relationship with plaintiffs, in that Greyhound's acts, as stated in this complaint, amount to an anticipatory repudiation of said contract by Greyhound.

Plaintiffs also reserve their right to petition the Court for damages for breach of contract or for specific performance of the contract made with defendant.

Defendant first argues that this Court has no jurisdiction to entertain this declaratory judgment action because the complaint fails to state an "actual controversy" within the meaning of 10 *Del. Code* § 6501.[1] The complaint fails to state an "actual controversy", defendant says, because the "actual controversy" has developed into "actual injury", for which there is full redress to the plaintiffs in an action at law for breach of contract. Defendant contends that the purpose of the Legislature in passing the declaratory judgment act was to provide a remedy where no previous remedy existed and nothing more, and that the statute was not intended to go beyond ameliorating that situation. It claims that implicit in the jurisdictional re-

---

[1] 10 *Del. Code* § 6501 provides as follows:

"Power of courts

"In cases of actual controversy, except with respect to divorce or annulment of marriage, the Supreme Court, the Superior Court, the Court of Chancery, and the Orphans' Court, upon petition, declaration, complaint, or other appropriate pleadings, may declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such."

quirements of a declaratory judgment action is a pleaded state of facts which would, but for the availability of relief by declaratory judgment, fail to state a claim for relief at law or in equity. Consequently, defendant argues, the "actual controversy" requirement of the Delaware declaratory judgment act is not met where the dispute between the parties does not relate to future rights and duties which are not yet possessory and which have not already accrued.

Defendant claims that *Stabler v. Ramsay*, 32 *Del. Ch.* 547, 88 *A.* 2d 546, supports its argument. It is true that the Supreme Court in the *Stabler* case said that the principal reason for the invention of the declaratory judgment procedure was to enable the law of a case to be determined before mere differences ripen into actual injuries. This statement, however, does not mean that the Court cannot entertain a declaratory judgment action because it had actually ripened into an action which could be maintained at law. The *Stabler* Court was confronted with an entirely different problem, namely, whether it could entertain the action if there was no likelihood of any future dispute and where the Court would, in effect, be merely giving advice.

The Delaware declaratory judgment act, like the federal act, requires the existence of an "actual controversy" as a jurisdictional prerequisite. An actual controversy which justifies resort to the declaratory judgment act exists where one side makes a claim of a present, specific right and the other side makes an equally definite claim to the contrary. *Harleysville Mutual Casualty Ins. Co. v. Carroll*, 11 *Terry* 67, 123 *A.* 2d 128, 130; *Marshall v. Hill*, 8 *Terry* 478, 93 *A.* 2d 524, 525; *Evers v. Dwyer*, 358 *U. S.* 202, 79 *S. Ct.* 178, 179, 3 *L. Ed.* 2d 222. The words "actual controversy" were used in contradistinction to a "moot" or hypothetical situation. In reality, there could be no greater indication of an actual controversy where a cause of action has already "accrued" to one of the parties, or if it is relatively certain that coercive litigation will eventually ensue between the parties. It was never meant that the words "actual

controversy" were to have the meaning that defendant gives them.

 It is true, as defendant states, that declaratory relief was enacted to extend the scope of the Court's protection in advance of harm, in an attempt to forestall rather than merely to repair damage. However, while the most dramatic use of declaratory judgment is to intervene before harm, it is not limited by statute to this specific relief, but is also available as a useful concurrent remedy, which supplies the Court with another method of settling claims for harm done. The declaratory judgment may avoid the necessity of immediately determining the proper kind and degree of coercive relief or the declaratory judgment may be phrased in broader terms which might avoid or simplify later litigation. Developments—Declaratory Judgments, 62 *Harv. L. Rev.* 787, 789, 790, 826, 833.

In line with its first argument, defendant contends that if a party has an adequate remedy at law or in equity, a complaint for declaratory judgment will not lie. Defendant explains that if plaintiffs' allegations in their complaint should be taken as true, they have an action at law for breach of contract based on the doctrine of anticipatory repudiation.

██ The mere availability of another adequate remedy does not in and of itself weigh against the giving of declaratory relief. *E. W. Bliss Co. v. Cold Metal Process Co.*, 6 *Cir.*, 102 *F. 2d* 105, 109; Judge Yankwich, Declaratory Judgments, 1 *F. R. D.* 295, 300.

██ The real test is whether or not the other remedy is more effective or efficient and thus whether the declaratory judgment action would serve a useful purpose. 6 *Moore's Federal Practice*, Par. 57.08(3), pp. 3031, 3032. Where the other remedy would be more effective, the Court may properly decline to assume jurisdiction in a declaratory judgment action. However, this is a discretionary matter with the Court, the only

limitation being that the Court cannot abuse its discretion. *Aetna Casualty & Surety Co. v. Quarles*, 4 *Cir.*, 92 *F.* 2d 321, 324.

The second sentence of Rule 57, Superior Court Rules, governing procedure in a declaratory judgment action, provides:

"The existence of another * * * remedy does not preclude judgment for declaratory relief in cases where it is appropriate." The complaint alleges matters which render the statute most suitable. The fact that plaintiffs may sue at law for anticipatory repudiation, or may go to equity, is immaterial, unless the other remedy is demonstrably superior. Settlement of the issues by declaratory judgment in this case may be all that the plaintiffs may desire. There is no pending action at law or equity that has been brought to the attention of the Court. If Greyhound has misconstrued the contract and is acting wrongfully thereunder, it may decide to comply with the contract for the balance of the contract term. It may agree to settle its differences in an amicable fashion rather than be forced to a determination of the liability on its breach. If Greyhound returns to performance under the contract, assuming that it is determined that the contract has been breached, Greyhound might decide to renew its contract, with or without certain modifications, for a subsequent term after 1962. Developments—Declaratory Judgments, 62 *Harv. L. Rev.* 787, at 826, 828.

I decide that this Court has the jurisdiction to entertain this declaratory judgment action. I, therefore, deny defendant's motion to dismiss the complaint on jurisdictional grounds.

The next ground for dismissal set forth by defendant is that the complaint seeks judgment on an oral agreement and raises serious disputes as to questions of fact. This point is raised to move the Court's discretion to decide against the use of declaratory judgment in this action. Defendant argues that 10 *Del. Code* § 6501 vests the Court with jurisdiction to "declare rights and other legal relations" of the parties, and that this language clearly contemplates that the statute should be used for con-

structional purposes rather than for the purpose of determining facts and resolving disputed issues of fact.

■ Our statute clearly contemplates the possibility that issues of fact may be raised for determination in a declaratory judgment action. Title 10 *Del. Code* § 6503, provides:

"When a proceeding under this chapter involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."

The first sentence of Rule 57, Superior Court Rules, also contemplates the possibility that factual issues may be raised which might have to be determined by a jury. This sentence provides:

"The procedure for obtaining a declaratory judgment pursuant to the statute of this state shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided by rules 38 and 39."

The mere fact that issues of fact as well as law are to be decided in a declaratory judgment action will not cause the remedy to be withheld. *Public Service Commission of Utah v. Wycoff*, 344 *U. S.* 237, 73 *S. Ct.* 236, 241, 97 *L. Ed.* 291. To attempt to distinguish between legal and factual issues is unsound because of the difficulty in attempting to separate them. There is nothing in the nature of the declaratory judgment action that precludes the use of a jury in determining fact issues where the declaratory judgment action is otherwise proper. Breese, Atrocities of Declaratory Judgment Law, 31 *Minn. L. Rev.* 575-584-587, and this is true, assuming without deciding, that an oral contract is involved. There is nothing on the face of the complaint or raised by the defendant in its argument that would move the Court's discretion to dismiss this complaint because of the possible presence of complicated issues of fact.

Defendant's next argument also tries to move the Court's discretion to dismiss this action. Defendant argues that plaintiffs indicate in their complaint that immediately on the entry of judgment they will seek a jury trial for damages for breach of contract or will seek equitable relief and that, therefore, this action serves no purpose. Furthermore, defendant contends that plaintiffs will seek not one but two jury trials, (1) a jury trial as to questions of fact raised by the declaratory judgment action; and (2) a jury trial on further questions of fact in an action at law for breach of contract and damages. Thus, says defendant, plaintiffs attempt to divide the suit into two parts, with a separate jury trial in each stage of the proceedings. In other words, defendant argues that plaintiffs, in reality, seek only an advisory opinion, as to the contract, from the Court and jury in the declaratory judgment action, and then plaintiffs further seek a jury trial on the second phase of the case to determine whether there has been a breach of contract and damages.

The declaratory judgment action has utility in this case. Our statute contemplates that the remedy may be cumulative. Title 10 *Del. Code* § 6502, provides:

"Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party, whose rights have been adjudicated by the declaration, to show cause why further relief should not be granted forthwith."

There would be no reason for the Legislature to have included this section unless it had contemplated the possibility that damages for past breach or otherwise might be obtained when it was required for the purpose of settling the entire controversy between the parties. In 6 *Moore's Federal Practice*, Par. 57.10, pp. 3047, 3048, it is said:

"Hence, a prayer for coercive relief may properly be combined with a prayer for a declaratory judgment; and the judgment on the merits may likewise combine both remedies, and couple, with a declaratory judgment, injunctive relief, an order for an accounting, a money judgment, or any other appropriate relief. Thus the alternative and cumulative nature of the remedy permits a complete adjudication of the controversy."

 Procedurally, then, it is not improper to suggest the possibility of or demand for combined relief in the complaint. *Chase National Bank of City of New York v. Citizens Gas Co.*, 7 *Cir.*, 113 *F.* 2d 217, 220. However, generally the relief prayed in the complaint will not control the ultimate relief that may be warranted. *Hunkin-Conkey Const. Co. v. Pennsylvania Turnpike Commission, D. C. M. D. Pa.*, 34 *F. Supp.* 26. Plaintiffs suggest the possibility of two separate jury trials in this matter. It is too early at this time to determine whether or not two jury trials are necessary. It is possible that all issues may be heard and determined at one time.

I conclude that plaintiffs' complaint states an action for declaratory relief and, therefore, deny defendant's motion to dismiss the complaint.

Defendant lastly asserts that the complaint must be dismissed as to both of the corporate plaintiffs because they are not parties to the contract upon which the suit is brought and hence are not real parties in interest entitled to join in the action.

This matter is before me on a motion to dismiss the complaint. Only two pleadings have been filed, namely, the complaint and the answer. I cannot now determine from the state of the record whether the corporate plaintiffs have been properly joined. This motion may be renewed at a later time, if defendant determines its renewal is warranted. I refuse to dismiss the action as to the corporate plaintiffs at this time.