# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

VIKING PUMP, INC. and
WARREN PUMPS LLC,

        Plaintiffs,

        v.

CENTURY INDEMNITY
COMPANY, *et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N10C-06-141 PRW CCLD

Submitted: February 26, 2018
Decided: May 23, 2018

## <u>MEMORANDUM OPINION AND ORDER</u>
*Upon Warren Pumps LLC's Motion to Set Judgment Amounts and
Prejudgment Interest,*
**DENIED.**

David J. Baldwin, Esquire, Jennifer C. Wasson, Esquire, Carla M. Jones, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Robin L. Cohen, Esquire (*pro hac vice*) (argued), Keith McKenna, Esquire (*pro hac vice*), McKool Smith, P.C., New York, New York, Attorneys for Warren Pumps LLC.

Kenneth J. Nachbar, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Garrett B. Moritz, Esquire, Nicholas D. Mozal, Esquire, Ross Aronstam & Moritz LLP, Wilmington, Delaware, Tancred Schiavoni, Esquire (*pro hac vice*) and Gary Svirsky, Esquire (*pro hac vice*) (argued), O'Melveny & Myers LLP, New York, New York; AND John D. Balaguer, Esquire, White and Williams LLP, Wilmington, Delaware. Of Counsel: Brian G. Fox, Esquire (*pro hac vice*) and Lawrence A. Nathanson, Esquire (*pro hac vice*), Siegal & Park, Mount Laurel, New Jersey, Attorneys for Defendants TIG Insurance Company, f/k/a International Insurance Company, with respect to policies numbered 5220113076 and 5220282357, and Westchester Fire Insurance Company, with respect to policy numbered 5220489339, by operation of novation; ACE Property & Casualty Insurance Company (f/k/a CIGNA Property & Casualty Insurance Company), as successor-in-interest to Central National Insurance Company of Omaha, but only as

respects policies issued through Cravens, Dargan & Company, Pacific Coast (improperly named as The Central National Insurance Company of Omaha); and Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Century Indemnity Company as successor to CIGNA Specialty Insurance Company (f/k/a California Union Insurance Company).

Anthony G. Flynn, Esquire, Timothy Jay Houseal, Esquire, Jennifer M. Kinkus, Esquire, Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, Laura S. McKay, Esquire (*pro hac vice*) (argued), Hinkhouse Williams Walsh LLP, Chicago, Illinois; AND, Wilmington, Delaware, Attorneys for Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies.

Thaddeus J. Weaver, Esquire, Dilworth Paxson LLP, Wilmington, Delaware, Laura S. McKay, Esquire (*pro hac vice*) (argued), Hinkhouse Williams Walsh LLP, Chicago, Illinois, Attorneys for OneBeacon America Insurance Company as successor to Commercial Union Insurance Company, XL Insurance America, Inc., as successor to Vanguard Insurance Company, and Republic Insurance Company, n/k/a Starr Indemnity & Liability Company.

James W. Semple, Esquire, C. Scott Reese, Esquire, Cooch & Taylor P.A., Wilmington, Delaware, Kristin Suga Heres, Esquire (*pro hac vice*) (argued), Zelle LLP, Framingham, Massachusetts, Attorneys for Defendant Westport Insurance Corporation.

**WALLACE, J.**

## I. INTRODUCTION

Plaintiff Warren Pumps LLC ("Warren") originally brought suit in the Delaware Court of Chancery seeking coverage under primary and excess insurance policies on underlying asbestos-related personal injury claims.[1] After granting the defendants' Renewed Motion to Dismiss for lack of subject matter jurisdiction, the Court of Chancery transferred the case to this Court.[2]

In its complaint, Warren sought declaratory relief against several excess insurers (the "Excess Insurers"),[3] requesting the Excess Insurers pay Warren's indemnification and defense costs for the underlying tort claims. Following a three-week trial in this Court, the jury returned a verdict largely in Warren's favor.[4] The

---

[1] *See Viking Pump, Inc. v. Liberty Mut. Ins. Co.*, 2007 WL 1207107, at *1 (Del. Ch. Apr. 2, 2007).

[2] *Viking Pump, Inc. v. Century Indem. Co.*, 2010 WL 2989690, at *1 (Del. Ch. June 1, 2010).

[3] "Excess Insurers" refers collectively to the following insurers remaining in this case: (1) TIG Insurance Company, as successor by merger to International Insurance Company, as successor by merger to International Surplus Lines Insurance Company ("ISLIC"); (2) TIG Insurance Company, as the successor-in-interest to International Insurance Company ("International"); (3) Century Indemnity Company ("Century"), as the successor-in-interest to the Insurance Company of North America ("INA"); (4) Certain Underwriters at Lloyd's, London and London Market Insurance Companies ("London"); (5) Lexington Insurance Company ("Lexington"); (6) OneBeacon America Insurance Company (now known as Lamorak Insurance Company ("Lamorak")), as successor to Commercial Union Insurance Company; and (7) Westport Insurance Corporation ("Westport"), as successor to Puritan Insurance Company ("Puritan").

[4] *In re Viking Pump, Inc.*, 148 A.3d 633, 641 (Del. 2016).

Court entered a Final Judgment Order in 2014 confirming the jury verdict.[5] All parties appealed, and the Delaware Supreme Court certified two questions to the New York Court of Appeals,[6] which answered those questions.[7] And in the consolidated appeal from the separate judgments by the Court of Chancery and this Court, the Delaware Supreme Court affirmed, in part, and reversed, in part.[8]

Warren now returns to this Court and brings what it terms a "Motion to Set Judgment Amounts and Prejudgment Interest,"[9] a novel application, against the remaining Excess Insurers. Warren asks the Court to set the purported or settlement value of its outstanding claims against the Excess Insurers as "a judgment." Warren

[5] *See* Final Judgment Order after Trial, *Viking Pump, Inc. and Warren Pumps LLC v. Century Indem. Co., et al.*, C.A. No. 10C-06-141 FSS [CCLD] (Del. Super. Ct. June 9, 2014) (hereinafter "Final Judgment Order").

[6] *In re Viking Pump, Inc.,* 146 A.3d 1046 (Del. 2015).

[7] *In the Matter of Viking Pump, Inc.,* 52 N.E.3d 1144 (N.Y. 2016).

[8] *In re Viking Pump, Inc.,* 148 A.3d 633 (Del. 2016).

[9] *See* Pl. Warren Pumps LLC's Mem. of Law in Supp. of its Mot. to Set J. Amounts and Prejudgment Interest, *Viking Pump, Inc. and Warren Pumps LLC v. Century Indem. Co., et al.*, C.A. No. N10C-06-141 PRW [CCLD] (Del. Super. Ct. Nov. 23, 2016) (hereinafter "Warren Mot."). The papers do not state if Plaintiff Viking Pump, Inc. ("Viking Pump") joins Warren's Motion. The Excess Insurers stated at oral argument that Viking Pump did not join Warren's motion. *See* Mot. to Set J. Amounts and Prejudgment Interest Oral Arg. Hr'g Tr., *Viking Pump, Inc. and Warren Pumps LLC v. Century Indem. Co., et al.*, C.A. No. N10C-06-141 PRW [CCLD], at 43:8–9 (Del. Super. Ct. Apr. 4, 2017) ("We are here on Warren's motion—which Viking [Pump] does not join, by the way[.]") (hereinafter "Hr'g Tr.").

additionally seeks prejudgment interest pursuant to New York Civil Practice Law and Rules § 5001(a).[10]

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. INDUSTRY BACKGROUND

Plaintiffs Warren and Viking Pump are industrial pump manufacturers whose products contained asbestos, and who were owned, between 1968 and 1988, by Houdaille Industries ("Houdaille").[11] Houdaille maintained commercial comprehensive general liability insurance consisting of primary, umbrella, and layers of excess insurance.[12] Plaintiffs each obtained their own commercial comprehensive general liability insurance policies as well.[13]

Houdaille divested itself in 1985, rendering Viking Pump and Warren separate, independent entities.[14] Asbestos liability claims were made by Plaintiffs against their own respective policies until 2005 when Liberty Mutual informed

---

[10] N.Y. C.P.L.R. § 5001(a) (2018) ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.").

[11] *Viking Pump, Inc. v. Century Indem. Co.,* 2013 WL 7098824, at *1 (Del. Super. Ct. Oct. 31, 2013) (hereinafter "*Viking Pump I*").

[12] *Id.*

[13] *Id.* at *2.

[14] *Id.*

-3-

Warren that the last Warren-only policy had exhausted.[15] To shield against the possibility of Warren draining the entirety of their shared liability insurance, Viking Pump brought suit against Liberty Mutual seeking injunctive relief and coverage under Houdaille's policies.[16]

## B. COURT OF CHANCERY 2005–2010

On June 30, 2005, Viking Pump filed its complaint against Liberty Mutual in the Court of Chancery, and Warren joined the action.[17] In its 2007 decision, the Court of Chancery held that Houdaille's primary and umbrella policies extended to Plaintiffs.[18] Subsequently, in 2008, Liberty Mutual and Plaintiffs "settled several outstanding claims," resulting in Liberty Mutual's dismissal from the case.[19]

The issue then became whether Plaintiffs were "entitled to exercise the rights of an insured under the excess policies" and whether "all sums" or "pro-rata" allocation was appropriate, triggering "Phase II" of the litigation.[20] The Court of

---

[15] *Viking Pump I*, 2013 WL 7098824, at *2.

[16] *Id. See also Viking Pump, Inc. v. Liberty Mutual Ins., Co.*, 2007 WL 1207107 (Del. Ch. Apr. 2, 2007).

[17] *Viking Pump I*, 2013 WL 7098824, at *2.

[18] *Id.*

[19] *Id.*

[20] *Viking Pump, Inc. v. Century Indem. Co.*, 2014 WL 1305003, at *1 (Del. Super. Ct. Feb. 28, 2014) (hereinafter "*Viking Pump II*").

Chancery held that Plaintiffs were insured under the excess policies.[21] Additionally, the Court held that "all-sums" was the appropriate allocation method,[22] which in effect tends to provide fuller coverage.[23] And the Court found that New York's injury-in-fact trigger applies.[24] "Together, these rulings mean that for each asbestos claim, all policies within the period triggered by injury are potentially liable for damages associated with that claim."[25] After making these findings, the Court of Chancery found that no possibility of equitable remedy survived, and transferred the case to this Court.[26]

## C. SUPERIOR COURT 2010–2013

On June 11, 2010, this case was transferred to the Superior Court's Complex Commercial Litigation Division for "Phase III."[27] The issues were whether Liberty Mutual policies were properly exhausted, triggering the Excess Insurers' obligations, "and whether the excess policies "follow-form" to the underlying

---

[21]      *Viking Pump II,* 2014 WL 1305003, at *1.

[22]      *Id.*

[23]      *Viking Pump I,* 2013 WL 7098824, at *3.

[24]      *Viking Pump II,* 2014 WL 1305003, at *1.

[25]      *Id.*

[26]      *Id.* at *2.

[27]      *Viking Pump I,* 2013 WL 7098824, at *4.

Liberty [Mutual] policies."[28] There were "lesser-included issues permeating this litigation, [including]: 'loss runs,' horizontal exhaustion, and Phase II's rulings' applicability."[29] Trial commenced in October 2013, under the assumption that the excess policies would be treated as ambiguous.[30] The jury returned a verdict largely favoring Plaintiffs.[31]

However, the Court found that "the verdict must be refined to conform to the policies' unambiguous meaning."[32] The Court held that the Liberty Mutual policies were properly exhausted.[33] In regard to whether excess policies "follow-form," the Court found: "a few excess policies truly 'follow-form,'"[34] "[o]ther policies include endorsements explicitly altering the original policy language to follow-form,"[35] "[s]everal policies contain 'Coverage' and 'Conditions' language in identical or

---

[28]     *Viking Pump I*, 2013 WL 7098824, at *5.

[29]     *Id.*

[30]     *Id.* at *7.

[31]     *Id.* at *1.

[32]     *Id.* at *16.

[33]     *Id.* at *20.

[34]     *Id.* at *24.

[35]     *Id. See also Cnty. of Columbia v. Cont'l Ins. Co.,* 83 N.Y.2d 618, 628 (N.Y. 1994). ("[I]t is settled that in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement.")

similar format,"[36] "[c]ertain London policies contain 'assistance and cooperation' clauses,"[37] and "[a] few policies follow-form, but with 'consent' and 'cooperation' clause exceptions.[38]

As to the lesser-included issues, the Court upheld verdicts on the following: "all sums" allocation,[39] and injury-in-fact.[40] Additionally, the Court held that horizontal exhaustion would apply in conformance with New York law.[41]

### D. SUPERIOR COURT 2013–2014

After receiving the verdict, the parties filed Rule 59(e) motions and responses.[42] Warren's motion requested supplementation of the opinion to clarify defense obligations and address International policies that were not mentioned.[43] A motion was also filed by three Excess Insurers to obtain clarity on the application of

---

[36] *Viking Pump I,* 2013 WL 7098824, at *25.

[37] *Id.* at *26.

[38] *Id.* at *27.

[39] *Id.* at *17.

[40] *Id.* at *18.

[41] *Id.* at *21.

[42] *Viking Pump II*, 2014 WL 1305003, at *2.

[43] *Id.*

horizontal exhaustion.[44] The Court additionally held that Warren was not required

to pursue horizontal exhaustion of Excess Insurers' policies.[45]

In June 2014, the predecessor Superior Court judge issued a Final Order and

Judgment.[46] The Final Order and Judgment stated, in relevant part:

> In accordance with 10 *Del. C.* § 6508, the parties may seek
> post-judgment relief (i) in the form of pre- and post-
> judgment interest and (ii) to determine amounts owed by
> any party, based on the declarations set forth in this Final
> Judgment Order.[47]

## E. DELAWARE SUPREME COURT

The parties cross-appealed.[48] After briefing and oral argument, the Supreme

Court certified two questions to the New York Court of Appeals:

1. Under New York law, is the proper method of allocation to be
   used all sums or pro rata when there are non-cumulation and
   prior insurance provisions?

2. Given the Court's answer to Question #1, under New York law
   and based on the policy language at issue here, when the
   underlying primary and umbrella insurance in the same policy
   period has been exhausted, does vertical or horizontal exhaustion

---

[44]   *Viking Pump II,* 2014 WL 1305003, at *2.

[45]   *Id.* at *11.

[46]   *See* Final Judgment Order.

[47]   Final Judgment Order at ¶ 29.

[48]   *Viking Pump,* 148 A.3d at 642.

apply to determine when a policyholder may access its excess insurance?[49]

The New York Court of Appeals answered:

1. All sums allocation is appropriate where there are non-cumulation/prior insurance provisions.

2. Excess policies are triggered by vertical exhaustion of the underlying available coverage within the same policy period.[50]

After the New York Court of Appeals answered the certified questions, the parties filed supplemental submissions to our Supreme Court.

On September 12, 2016, the Supreme Court affirmed, in part, reversed, in part, and remanded the matter. Relevant here, the Supreme Court affirmed that: 1) Warren and Viking are covered under Houdaille's policies;[51] and 2) Liberty's primary policies are exhausted.[52]

---

[49] *Viking Pump*, 148 A.3d at 642. *See also In re Viking Pump, Inc.*, 37 N.E.3d 104 (N.Y. 2015).

[50] *Viking Pump*, 148 A.3d at 642. *See also In re Viking Pump, Inc.*, 52 N.E.3d at 1156–57.

[51] *Viking Pump*, 148 A.3d at 652.

[52] *Id*. at 658. The Supreme Court affirmed and reversed several of the Superior Court's decisions regarding defense costs, none of which bear repeating here. *See id*. at 663, 665, 671, 674, 686.

### F. MOTION TO SET JUDGMENT AMOUNTS AND PREJUDGMENT INTEREST

Based on the Supreme Court's ruling, Warren allocated its non-reimbursed costs to the Excess Insurers as follows:[53]

| Excess Insurer | Allocation of Unreimbursed Costs as of August 31, 2016 |
|---|---|
| International | $3,937,818.92 |
| Century | $321,295.16 |
| ISLIC | $10,000,000 |
| Westport | $1,392,506.32 |
| Lamorak | $420,591.67 |
| London/Lexington | $69,146,773.03 |

In October 2016, Warren sent letters to the Excess Insurers requesting payment of the amounts listed above.[54] Warren contends it included necessary evidence supporting the costs.[55] The tenor of Warren's briefing indicated that it expected immediate payment.

---

[53] Warren Mot. at 18.

[54] *Id.*

[55] *Id.*

In response, the Excess Insurers began reviewing, processing, and paying claims.[56] ISLIC settled with Warren and Viking Pump.[57] Westport paid Warren immediately upon receiving notification that ISLIC's policy, which sat immediately beneath Westport, exhausted.[58] Lamorak first received Warren's tender of defense costs and settlements associated with its policies on October 12, 2016.[59] Lamorak paid Warren, in full, on or about November 29, 2016.[60] International fully paid out Warren's claims at some point after the Supreme Court's ruling, as well.[61]

---

[56] Excess Insurers' Memorandum of Law in Opposition to Warren Pumps LLC's Motion to Set Judgment Amounts and Prejudgment Interest, *Viking Pump, Inc. and Warren Pumps LLC v. Century Indem. Co., et al.*, C.A. No. N10C-06-141 PRW [CCLD], at 26–28 (Del. Super. Ct. Feb. 6, 2017) (hereinafter "Excess Insurers' Opp.").

[57] *See* Tr. ID 60087152 (dismissing all claims between Warren and ISLIC); *see also* Tr. ID 60181290 (dismissing all claims between Viking Pump and ISLIC).

[58] *See* Hr'g Tr. at 62–63 ("[W]arren tendered claims to Westport for the very first time by letter dated October 31, 2016, . . . acknowledg[ing] that the underlying [ISLIC policy] had not yet been exhausted. Westport was, ultimately, notified that this ISLIC policy exhausted January 9th, 2017. Within two months—well, actually, in March 2017, Westport paid the entire amount and past costs, and also additionally paid other tendered claims that were tendered in November.").

[59] Affidavit of Laura McKay, *Viking Pump, Inc. and Warren Pumps LLC v. Century Indem. Co., et al.*, C.A. No. N10C-06-141 PRW [CCLD], at ¶ 2 (Del. Super. Ct. Feb. 6, 2017) (hereinafter "McKay Aff.").

[60] *Id.* at ¶ 5.

[61] *See* Hr'g Tr. at 17 ("Four of the six carriers paid in full, Your Honor. The only ones that didn't was [sic] London and Century."). *See also* Exhibit A to Letter to the Honorable Paul R. Wallace from Jennifer C. Wasson, Esquire, attaching chart from oral argument, dated June 7, 2017 (chart providing updated sums the insurers paid as the date of oral argument, showing International paid out all of Warren's sought after reimbursement).

Two other Excess Insurers, Lexington and London, sent Warren's tender of 800 claims (and their 700,000 pages of supporting documentation) to an Insurance Consulting practice, Mazars LLP, for review.[62] Mazars reviewed the documentation to confirm their compliance with the Supreme Court's ruling.[63] As of February 6, 2017, Mazars had reviewed 50% of Warren's tenders to Lexington and London, representing approximately 70% of the alleged costs.[64] On December 29, 2016, London and Lexington paid $9,860,604.62 associated with 34 of Warren's claims.[65] Further, on February 3, 2017, London confirmed that approximately $14,863,450 in additional settlement costs and $4,710,040.90 in associated defense costs for 275 claims comported with the Supreme Court's decision, and that London and Lexington would make their best efforts to pay those amounts by February 28, 2017.[66]

In April, 2017, the Court heard oral argument. Warren informed the Court that four of the six remaining Excess Insurers had paid out their outstanding claims.

---

[62] Affidavit of Romy F. Comiter, *Viking Pump, Inc. and Warren Pumps LLC v. Century Indem. Co., et al.*, C.A. No. N10C-06-141 PRW [CCLD], at ¶ 3 (Del. Super. Ct. Feb. 6, 2017) (hereinafter "Comiter Aff.").

[63] *Id.* at ¶ 4.

[64] *Id.* at ¶ 5.

[65] McKay Aff. at ¶ 12.

[66] *Id.* at ¶ 13. As of the date of oral argument, Lexington and London paid out approximately $30 million for 308 claims. *See* Hr'g Tr. at 67.

Nonetheless, Warren argued that prejudgment interest was warranted on all sums, paid or outstanding, due to the Excess Insurers' alleged delay of payments. Warren could not pinpoint a case at argument that allowed the Court to set a judgment on sums already paid in a matter where a breach of contract was never alleged. The Court allowed supplemental submissions for Warren to find relevant case law.

## III.  PARTIES' CONTENTIONS

Warren argues the spirit of Section 5001 warrants prejudgment interest. Warren contends that although Section 5001 requires "a sum awarded because of a breach of performance of a contract" before prejudgment interest is granted, the fact that Warren's complaint requested declaratory relief rather than contract damages is not a bar to recovery.[67] Rather, Warren posits, "an award of . . . prejudgment interest is mandatory" due to the Excess Insurers' alleged breach of their obligations to Warren by delaying payment.[68] And even if the Excess Insurers had not been intentionally dilatory, Warren argues, it is entitled to prejudgment interest as a matter of right.[69]

The Excess Insurers counter that Section 5001's plain language only permits prejudgment interest in claims where a breach of contract is alleged; but here only a

---

[67]  Warren Mot. at 22.

[68]  *Id.*

[69]  *See id.* at 22–23.

declaratory judgment was sought.[70] When no damages are awarded on which to impose prejudgment interest, the Excess Insurers contend, Section 5001 cannot apply. Further, the Excess Insurers argue, Warren's request to set a judgment amount after trial is merely an attempt to circumvent Warren's earlier failure when it tried to amend its complaint to include a breach-of-contract claim.[71]

## IV. DISCUSSION

Warren first requests this Court set judgment pursuant to 10 *Del. C.* § 6508. Under § 6508, "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper."[72] While 10 *Del. C.* § 6508 provides a procedural mechanism via which this Court might award certain relief post-trial, the recovery of prejudgment interest is a matter of substantive law.[73] And the parties agree that New York substantive law governs this dispute.[74]

---

[70] Excess Insurers' Opp. at 10.

[71] Excess Insurers' Opp. at 24.

[72] DEL. CODE ANN. tit. 10, § 6508 (2018).

[73] *Cooper v. Ross & Roberts, Inc.*, 505 A.2d 1305, 1307 (Del. Super. Ct. 1986) ("The recovery of prejudgment interest in Delaware is a matter of substantive law.").

[74] *See* Hr'g Tr. at 20 ("The parties agree, Your Honor, it is a substantive issue, and it is under New York law.").

-14-

## A. TEN *DEL. C.* § 6508 DOES NOT PERMIT THE AWARD OF DAMAGES WITHOUT A FACT FINDER'S DETERMINATION

Warren argues that under 10 *Del. C.* § 6508, this Court has the discretion to set a judgment in this action in the amount Warren believes it is entitled from the Excess Insurers—even though no court or jury has rendered a verdict or other judgment in that amount.[75]

Warren's cited case law does not support its argument that § 6508 grants this Court the authority to set damages without a fact finder's determination of the appropriate amount. For instance, in *Olson Bros. Inc. v. Englehart*,[76] the Court did not enter the amount sought by the plaintiffs as a judgment, but instead granted the plaintiffs leave to amend their answer to file a counterclaim seeking monetary damages.[77] The *Olson Bros.* holding suggests that a fact finder would still have to make an "ascertainment of damages" on the amended prayer for relief.[78]

Warren then turns to *Clemente v. Greyhound Corp.*[79] In *Clemente*, the Court observed, "[t]here would be no reason for the Legislature to have included [10 *Del.*

---

[75]     Warren Mot. at 8.

[76]     245 A.2d 166 (Del. 1968).

[77]     *Id.* at 169.

[78]     *Id.*

[79]     Hr'g Tr. at 41 (citing *Clemente v. Greyhound Corp.*, 155 A.2d 316 (Del. Super. Ct. 1959)).

C. § 6508] unless it had contemplated the possibility that damages for past breach or otherwise might be obtained when it was required for the purpose of settling the entire controversy between the parties."[80] But *Clemente* holds only that a complaint may seek combined relief, and "generally the relief prayed in the complaint will not control the ultimate relief that may be warranted."[81] *Clemente* does not suggest the Court has the ability to "set damages" not specifically awarded by a fact finder's verdict or judgment through an adversarial process.

*Sullivan v. Local Union 1726 of AFSCME, AFL-CIO*,[82] also cited at oral argument,[83] helps no more. In *Sullivan*, the trial court expressly awarded damages in conjunction with declaratory relief.[84] Here, the Court merely identified the Excess Insurers's obligations to pay under the policies and suggested that the parties could seek post-judgment relief "(i) in the form of pre- and post-judgment interest and (ii) to determine amounts owed by any party, based on the declarations set forth in this Final Judgment Order."[85] Warren does not seek any determination here on the

---

[80]    *Clemente*, 155 A.2d at 323.

[81]    *Id.*

[82]    464 A.2d 899, 903 (Del. 1983).

[83]    Hr'g Tr. at 41.

[84]    *Sullivan*, 464 A.2d at 901, 903.

[85]    Final Judgment Order at ¶ 29.

-16-

amount owed; rather, it asks the Court to adopt the amount of the claims it has tendered to the Excess Insurers many of which were paid expeditiously upon tender.[86] According to *Sullivan*, this would not be a proper application of 10 *Del. C.* § 6508: the *Sullivan* court found that the trial court "erred in awarding damages without a further fact hearing."[87]

In short, none of the authorities Warren cites support the notion that a court may just "set a judgment amount" absent a judge or jury's specific finding on damages. Instead, Warren's citations affirm that some determination of damages is necessary—not merely a finding of an *obligation* to pay—for the Court to deem it a monetary judgment.

## B. WARREN'S NOVEL APPLICATION OF SECTION 5001 FINDS NO SUPPORT IN CASE LAW

Absent an award of monetary breach-of-contract damages, Warren cannot recover prejudgment interest under New York law. And no court has awarded Section 5001 prejudgment interest under similar circumstances.

New York Civil Practice Law and Rules Section 5001 holds that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract[.]"[88] By requesting the Court set judgment under 10 *Del. C.* § 6508, Warren

---

[86]     *See* Warren Mot. at 18.

[87]     *Sullivan*, 464 A.2d at 903.

[88]     N.Y. C.P.L.R. 5001(a) (2018).

hopes to meet Section 5001's threshold of a "sum awarded" for "breach of performance" and recover prejudgment interest. The Excess Insurers contend that Warren's proposed application of Section 5001 contradicts the plain language of the statute and finds no support in New York law.

New York's Court of Appeals has stated that Section 5001 "is intended to indemnify successful plaintiffs 'for the nonpayment of what is due to them[,]' and is not meant to punish defendants for delaying the final resolution of the litigation."[89] The Court has further defined prejudgment interest as "the cost of having the use of another person's money for a specified period."[90]

Warren fails to cite to a single case where a court, applying New York law, set a judgment amount on which to apply CPLR 5001 where the plaintiff did not bring suit for money damages for breach of a contract. Several of Warren's authorities stand for the proposition that where a plaintiff brings suit on a breach of contract, but the principal is paid prior to the award of judgment, Section 5001 may be applied to the delinquent payment.[91] No cited case suggests that Section 5001

---

[89]    *Love v. State*, 583 N.E.2d 1296 (N.Y. 1991) (internal citation omitted).

[90]    *Aurecchione v. N.Y. State Div. of Human Rights*, 771 N.E.2d 231, 234 (N.Y. 2002) (quoting *Love*, 583 N.E.2d at 1296).

[91]    *See TIG Ins. Co. v. Newmont Mining Corp.*, 2005 WL 2446234, at *1 (S.D.N.Y. Oct. 4, 2005) (noting, in a breach of contract suit where the principal was ultimately paid before judgment, that "[e]ven if no sum is awarded, for example, because the defendant paid the principal amount prior to trial, a plaintiff may still claim prejudgment interest if it reserved its right to interest"); *In re Hoffman*, 712 N.Y.S.2d 165, 166 (N.Y. App. Div. 2000) (holding that, where the underlying

-18-

may be applied where the underlying suit requests declaratory relief rather than monetary damages. Nor has any cited case suggested that amounts agreed upon and paid post-declaratory judgment may be retroactively declared "damages" for the purposes of awarding prejudgment interest under Section 5001.

Courts interpreting Section 5001 have instead consistently found that breach-of-contract damages are a necessary prerequisite for allowing prejudgment interest. Take *Royal Indem. Co. v. Providence Washington Ins. Co.*[92] There, the federal district court found that a contribution claim for monetary damages between two insurers was tantamount to a contract action.[93] In *Royal Indem.*, one insurer sued a fellow insurer for its failure to defend and indemnify the parties' common Insured.[94] The Insured was awarded almost $500,000 in an underlying pharmaceutical claim.[95] Royal Indemnity sought, was awarded, and received, specific monetary contribution from a fellow insurer. And so, the court found Section 5001 was triggered and

---

suit was "essentially in the nature of breach of contract," "the respondents' tender of [late contract] payment after the commencement of litigation did not defeat the petitioner's statutory rights under CPLR 5001 because she accepted the tender without prejudice to her claim for interest").

[92]     966 F. Supp. 149 (N.D.N.Y. 1997).

[93]     *Id.* at 150–51.

[94]     *Id.* at 150.

[95]     *See id. See also Varda, Inc. v. Ins. Co. of N. Am.,* 45 F.3d 634, 636 (2d Cir. 1995) (affirming a prejudgment interest award in a breach of contract claim where a jury awarded breach of contract damages).

interest could be applied to the sum awarded as part of the court's judgment that determined both the obligation and damage amount.

But here, Warren did not seek monetary damages in its complaint. Warren sought declaratory relief, *i.e.*, a declaration of the contours of the Excess Insurers' obligation to pay. Warren's additional cited cases suffer the same defect: it cannot cite to a single instance where a court premised its prejudgment award on a similar action for declaratory relief without proving specific monetary damages at trial.[96]

Too, a holding awarding prejudgment interest without an underlying breach of contract damages award would run contrary to the plain language of Section 5001: an award of interest requires the award of a sum *"because of a breach of performance of a contract."* Recently, facing a similar request for entry of judgment and prejudgment interest under Section 5001 in *TIAA-CREF Individual & Institutional Services, LLC v. Illinois National Insurance Company*, this Court noted that "the purposes served by prejudgment interest in other cases do not give the Court license to . . . ignore the fact [Section 5001] requires that the Court award a sum for breach

---

[96] *See Cont'l Cas. Co. v. Employers Ins. Co. of Wasuau*, 865 N.Y.S.2d 855, 862 (Sup. Ct. N.Y. Cnty. 2008), *rev'd, Cont'l Cas. Co. v. Employers Ins. Co. of Wausau*, 923 N.Y.S.2d 538 (N.Y. App. Div. 2011) (in which plaintiffs sought declaratory relief in the form of the Court's determination of "the appropriate reimbursement with interest on some or all defense costs incurred by [plaintiffs] on certain claims," and received prejudgment interest on that reimbursement amount); *Aurecchione v. N.Y. State Div. of Human Rights*, 771 N.E.2d at 233 (awarding prejudgment interest at the Court's discretion under a human rights statute, not Section 5001).

of performance."[97]   Further, the Court found it significant that "[w]hile a sum awarded for anticipatory breach is a sum awarded for breach of performance of a contract under Section 5001(a), TIAA-CREF never asked this Court to award it summary judgment on its anticipatory breach claim, and TIAA-CREF never requested that the jury render a verdict on its anticipatory breach claim."[98]

Here, Warren sought and received declaratory relief in its action against the Excess Insurers.[99]   Armed with the judgment it had received, *i.e.*, a declaration of obligations, Warren tendered a number of indemnity and defense claims to the Excess Insurers.  Warren now asks the Court to set the amount of those just-tendered and resolved insurance claims, unverified by any fact finder, as a "judgment" in this case for the purpose of recovering prejudgment interest.  Case law does not support, nor can the Court divine from its plain language, Warren's peculiar interpretation of Section 5001.  Warren's Motion for prejudgment interest is **DENIED.**

## V.   CONCLUSION

Because Warren's complaint sought declaratory relief, rather than breach-of-contract monetary damages, it now asks the Court to enter a damage "judgment"

---

[97]   *TIAA-CREF Individual & Institutional Servs., LLC v. Ill. Nat'l Ins. Co.*, 2017 WL 5197860, at *8 (Del. Super. Ct. Oct. 23, 2017).

[98]   *Id.* at *8.

[99]   Compl. at ¶¶ 56–79 (seeking declaratory judgment, on four causes of action, determining the extent of the Excess Insurers' obligations to Plaintiffs).

against the Excess Insurers in the amount of its claims tendered under the excess insurance policies that seem to have been or are being promptly paid upon tender. Such a request finds footing neither in 10 *Del. C.* § 6508's procedures nor in substantive New York law. Absent a determination of damages at trial or other dispositive proceeding, the Court cannot appoint the post-verdict settlement amounts sought by Warren and paid by the Excess Insurers as a "judgment" for the purpose of awarding prejudgment interest.

Accordingly, Warren's Motion to set monetary judgments against the Excess Insurance and then grant pre-judgment interest on such contrivances is **DENIED.**

**IT IS SO ORDERED.**

_____
**Paul R. Wallace, Judge**

-22-