# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| CIBC BANK USA F/K/A THE PRIVATEBANK AND TRUST COMPANY, AS ADMINISTRATIVE AGENT, | ) ) ) ) ) | C.A. No. N18C-07-130 EMD CCLD |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| JH PORTFOLIO DEBT EQUITIES, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

Submitted: February 21, 2021
Decided: June 2, 2021

*Upon Defendants' Motion to Dismiss*
***DENIED in part and GRANTED in part***

Kevin J. Mangan, Esquire, Nicholas T. Verna, Esquire, Womble Bond Dickinson (US) LLP, Wilmington, Delaware; Edward S. Weil, Esquire, Melanie J. Chico, Esquire, Mark A. Silverman, Esquire, Dykema Gossett PLLC, Chicago, Illinois; *Attorneys for Plaintiff CIBC Bank USA f/k/a The PrivateBank and Trust Company, as administrative agent.*

Raymond H. Lemisch, Esquire, Sean M. Brennecke, Esquire, Klehr Harrison Harvey Branzburg LLP, Wilmington, Delaware; Michael Granne, Esquire, Provenzano Granne & Bader LLP, New York, New York; *Attorneys for Defendants Metropolitan Partners Fund III A, LP, Series F&F of Metropolitan Partners Fund IV, LLC, Series Institutional of Metropolitan Partners Fund IV, LLC, and Metropolitan Partners Fund III, LP.*

Matthew B. Lunn, Esquire, Mary F. Dugan, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; *Attorneys for Atalaya Special Opportunities Fund IV LP*.

David E. Wilks, Esquire, Andrea S. Brooks, Esquire, Julie M. O'Dell, Esquire, Wilks, Lukoff & Bracegirdle, LLC, Wilmington, Delaware; *Attorneys for JH Portfolio Debt Equities, LLC, JH Portfolio Debt Equities 2, LLC JH Portfolio Debt Equities 4, LLC, JH Reviver LLC Holdings, LLC, COCD Asset Holdings LLC, and CX Asset Holdings, LLC*.

**DAVIS, J.**

## I.    INTRODUCTION

This is a breach of contract and fraud case assigned to the Complex Commercial Litigation Division of the Court.  Plaintiff CIBC Bank USA f/k/a The PrivateBank and Trust Company ("CIBC") filed suit against JH Portfolio Debt Equities, LLC ("JH"), Metropolitan Partners Fund, IIIA LP (Met IIIA), COCD Asset Holdings LLC ("COCD"), CX Asset Holdings LLC ("CX"); Atalaya Special Opportunities Fund VI LP ("Atalaya"); Series Institutional of Metropolitan Partners Fund IV, LLC ("Institutional"); Series F&F of Metropolitan Funds IV, LLC ("Series F&F"); and Metropolitan Partners Fund III, LP ("Met Fund III").  In response, certain Defendants filed a motion to dismiss (the "Motion").[1]

For the reasons set forth below, the Court will **DENY** the Motion in part and **GRANT** the Motion in part.

## II.    BACKGROUND

As this is a Motion to Dismiss, all information is drawn from the Second Amended Complaint (the "SAC") and its attached exhibits.[2]

### A.  PARTIES

CIBC is the Administrative Agent for a group of several banks.[3]  CIBC brought this action against three groups: JH, the Joint Venture Partners, and the Joint Venture Lenders.

The Joint Venture Partners are:

- Met IIIA
- COCD
- CX

---

[1] Defendants JH, COCD and CX filed an opening brief while Defendants Met IIA, Met IV and Met III filed a separate brief.

[2] Unless otherwise indicated, the following are the facts as alleged in the SAC.  When considering a motion under Civil Rule 12(b)(6), the Court must assume the truthfulness of all well-pled allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See, e.g., Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011).

[3] SAC 1.

Each of the Joint Venture Partners is organized in Delaware.[4]

The Joint Venture Lenders are:

- Atalaya
- Institutional
- Series F&F
- Met Fund III

JH's principals are Douglas Jacobsen and Norman Kravetz.[5]  Mr. Jacobsen was a Class A-2 Representative of Metropolitan Partners Group Management, LLC ("Met Management") and his vote was required for all major decisions of Met Management.[6]  Mr. Kravetz is a principal and the managing member of Pacific Capital Holdings, which is a member of Joint Venture Partners, COCD and CX.[7]  Mr. Kravetz was also a manager for Metropolitan Partners Holdings, LLC ("Met Holdings").[8] Met Holdings and Met Management managed and controlled the Joint Venture Partners and Joint Venture Lenders.[9]

## B. THE CREDIT AGREEMENT AND SECURITY AGREEMENT

JH and a group of related non-party entities (collectively and including JH, the "Borrowers") purchased portfolios of consumer and merchant loan obligations at a discount and recovered the amounts due on the accounts associated with the portfolios.[10]

The Borrowers and CIBC entered into a Second Amended and Restated Credit Agreement (the "Credit Agreement") on June 29, 2017.[11]  The Credit Agreement provided the Borrowers with a revolving line of credit in an aggregate amount not to exceed the lesser of the

---

[4] *Id.* ¶ 37
[5] *Id.* ¶ 1.
[6] *Id.* ¶ 4.
[7] *Id.* ¶ 5.
[8] *Id.*
[9] *Id.* ¶ 6.
[10] *Id.* ¶ 7.
[11] *Id.* ¶ 41; Ex. C (Credit Agreement).

Aggregate Commitments (totaling $182,000,000) and the Borrowing Base Amount.[12]  A Security

Agreement (the "Security Agreement") dated June 29, 2017 secured the loans issued under the

Credit Agreement.[13]  The Security Agreement grants CIBC a first priority security interest in all

the collateral described in the Security Agreement, including the certain portfolios described in

Security Agreement Section 2.1 (the "Portfolios").[14]

Under the Security Agreement, the Borrowers agreed not to take any actions that would

materially impair the collateral and covenanted that they would not permit any "Subsidiary"

(defined in the Credit Agreement) to amend or modify their organizational documents "in any

way which could reasonably be expected to materially adversely affect the interests of the

Administrative Agent."[15]  The Credit Agreement defines "Subsidiary" as any business entities,

including joint ventures, limited liability companies, which are managed or otherwise controlled,

directly or indirectly, by the Borrowers.[16]

Credit Agreement Section 11.14 is a forum selection clause that provides:

(b) SUBMISSION TO JURISDICTION.  THE COMPANY AND EACH OTHER
LOAN PARTY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT
IT WILL NOT COMMENCE ANY ACTION, LITIGATION OR PROCEEDING
OF ANY KIND . . . AGAINST THE ADMINISTRATIVE AGENT, ANY
LENDER OR ANY RELATED PARTY OF THE FOREGOING IN ANY WAY
RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT
OR THE TRANSACTIONS RELATING HERETO OR THERETO, IN ANY
FORUM OTHER THAN THE COURTS OF THE STATE OF ILLINOIS
SITTING IN COOK COUNTY AND OF THE UNITED STATES DISTRICT
COURT OF THE NORTHERN DISTRICT OF ILLINOIS[17]

---

[12] *Id.* ¶¶ 42, 43.
[13] *Id.* ¶ 46.
[14] *Id.* Ex. E § 2.
[15] *Id.* ¶ 49; Ex. E § 4.3
[16] *Id.* ¶ 50; Ex. C 27.
[17] *Id.* Ex. C (Credit Agreement § 11.14).

4

Credit Agreement Section 1.01 defines "Company" as JH and "Loan Parties" refer to the other non-party Borrowers.[18]

### C. THE JOINT VENTURES

JH entered into joint ventures with the Joint Venture Partners.[19] The Joint Ventures were:

- JH Met Asset Entity LLC, a Delaware LLC ("JH Met"). Its members were Met Fund IIA, COCD and JH. JH managed JH Met.[20]
- JH CX Asset Entity LLC, a Delaware LLC ("JH CX"). Its members were JH and CX. JH managed JH CX.[21]

The Joint Ventures purchased portfolios which were serviced by JH.[22] As servicer, JH would collect proceeds and make distributions to the Joint Ventures members.[23] The Joint Venture Partners financed their equity contributions with loans from the Joint Venture Lenders.[24]

The Joint Venture Agreements for JH Met and JH CX required JH to make distributions based on "Net Collections" generated by the Portfolios owned by each respective Joint Venture.[25] "Net Collections" is defined as:

> [A]ll Collections received by or on behalf of the [Joint Venture or its members] in respect of the Portfolio and the applicable monthly period, less all actual costs of collection, including legal and other collection costs, incurred by the [Joint Venture] for the Portfolio and the applicable monthly period less the sum of the Servicing Fees paid in respect of the Portfolio and the applicable monthly period.[26]

CIBC asserts that the Joint Venture Agreements require JH to make distributions based on "net *actual* collections."[27]

---

[18] *Id*. Ex. C (Credit Agreement § 1.01).
[19] *Id*. ¶ 53.
[20] *Id*. ¶¶ 54-55.
[21] *Id*. ¶ 61.
[22] *Id*. ¶¶ 56, 62.
[23] *Id.*
[24] *Id*. ¶¶ 60, 66.
[25] *Id*. ¶ 67; Ex. A §§ 8.1-8.2; Ex. B § 8.1.
[26] *Id*. Ex. A Ex. Z-3; Ex. B Ex. Z-3.
[27] *Id*. ¶ 69.

### D. THE ACKNOWLEDGMENT AGREEMENTS BETWEEN THE JOINT VENTURE PARTIES AND CIBC

On June 29, 2017, CIBC executed Acknowledgement Agreements with the Joint Ventures and each of their members.[28] Under the Acknowledgement Agreements, the Joint Venture Partners agreed not to amend their respective Joint Venture Agreements without CIBC's written consent.[29] JH and the Joint Venture Partners also represented that the Joint Venture Agreement "constitutes the entire agreement between the members of the [Joint Venture] and there have been no amendment, modifications or additions to the [Joint Venture Agreement] (written or oral)."[30]

### E. THE SIDE LETTER AGREEMENTS

#### i. *The COCD Side Letter Agreements*

JH and COCD entered into Side Letter Agreements ("COCD Side Letter Agreement") dated September 29, 2017, October 30, 2017 and November 28, 2017.[31] The Side Agreements require JH to make distributions based on the "positive difference" between the projected and actual collections from the Portfolios.[32] The Joint Ventures started making distributions based upon projected collections because JH determined that the Portfolios were underperforming.[33] A January 28, 2018 Side Letter Agreement provided JH with the option of making distributions based on projected or actual collections.[34] The Side Letter Agreements include schedules listing projected distributions to COCD based on projected collections.[35]

---

[28] *Id.* ¶¶ 70-71; Ex. G; Ex. H.
[29] *Id.* ¶ 72; Ex. G § (d); Ex. H § (d).
[30] *Id.* ¶ 73; Ex. G § (b); Ex. H § (b).
[31] *Id.* ¶ 75; Ex. I.
[32] *Id.* ¶ 75; Ex. I.
[33] *Id.* ¶ 76.
[34] *Id.* ¶ 77; Ex. I.
[35] *Id.* ¶ 78; Ex. I.

CIBC was unaware of the Side Letter Agreements until they were provided by Borrower's counsel on or about June 12, 2018.[36] Moreover, CIBC did not know that JH and the Borrowers made distributions based on projected collections until CIBC further investigated prior to filing this action.[37] The Joint Venture Partners failed to obtain CIBC's written consent to make the Side Letter Agreements.[38]

### ii. The CX Side Letter Agreement

On November 1, 2016, JH, JH CX, Met Fund IIA and CX entered a side agreement ("CX Side Letter Agreement").[39] In the Side Letter Agreement, JH agreed that if Met Fund IIIA failed to earn an internal rate of return of at least 30% by November 1, 2019, then Met Fund IIA may require that JH purchase the CX Asset Loan at an amount that would result in Met Fund IIIA earning a 30% rate of return.[40] JH received no consideration as part of the Side Letter Agreement and JH is not a party to the CX Asset Loan.[41]

### iii. The Participation Agreement

Met Fund IIIA and JH executed a Participation Agreement ("Participation Agreement").[42] The Participation Agreement has JH selling "a portion of the collections owed to [JH] . . . such that [Met Fund IIIA] will be entitled to receive 74%" of the interest in collections while the Joint Venture Agreement specified that Met Fund IIIA would receive a 60% interest in net collections.[43] The Joint Venture Partners and JH did not disclose to CIBC of the existence of

---

[36] *Id.* ¶ 80-81.
[37] *Id.* ¶ 80-81.
[38] *Id.* ¶ 82.
[39] *Id.* ¶¶ 84-85; Ex. L.
[40] *Id.* ¶¶ 84-85; Ex. L.
[41] *Id.* ¶ 86.
[42] *Id.* ¶ 88.
[43] *Id.* ¶ 88.

the CX Side Letter Agreement or the Participation Agreement when they executed the Acknowledgement Agreements.[44]

## F. DAMAGES

The Participation Agreement resulted in a transfer of 35% of JH's interest in collections to Met Fund IIA and the distribution based on projected, rather than actual, collections resulted in substantial overpayments by JH to the Joint Venture Partners.[45]  Met Fund IIIA, as of January 31, 2019, received at least $1,919,167.87 in Portfolio distributions while it was only entitled to $1,179,623.85 resulting in an overpayment of $739,544.02 and a corresponding depletion of CIBC's collateral by that amount.[46]  COCD received at least $35,571,475.31 in Portfolio distributions while it was actually entitled to $33,354,659.29 resulting in an overpayment of $2,216,816.02 and a corresponding depletion of CIBC's collateral by that amount by January 31, 2019.[47]  As of January 31, 2019, CX Asset received at least $13,807,950.00 in Portfolio distributions while it was actually entitled to $10,182,116.35 resulting in an overpayment of $3,625,834.65 and a corresponding depletion of CIBC's collateral by that amount.[48]

## G. THE NORTHERN DISTRICT OF ILLINOIS LITIGATION

CIBC brought suit against the Borrowers in the Northern District of Illinois (the "Illinois Action") alleging multiple defaults by the Borrowers under the Credit Agreement and Security Agreement.[49]  CIBC accelerated all amounts due and owing under the Credit Agreement and demanded immediate repayment because of the Borrowers' defaults.[50]  CIBC seeks recovery of

---

[44] *Id.* ¶¶ 90-91
[45] *Id.* ¶¶ 92-93.
[46] *Id.* ¶ 94.
[47] *Id.* ¶ 95
[48] *Id.* ¶ 96.
[49] *Id.* ¶ 100.
[50] *Id.* ¶ 104.

at least $172,500,000.00 together with interest, attorneys' fees, costs, and expenses from the Borrowers in the Illinois Action.[51]

## H. PROCEDURAL HISTORY

CIBC filed its initial complaint on July 16, 2018 and its First Amended Complaint on April 30, 2019. On November 26, 2019, CIBC filed the Second Amended Complaint alleging (1) actual and constructive fraudulent transfers against JH, the Joint Venture Partners and the Joint Venture Lenders, (2) breach of contract against the Joint Venture Partners, (3) breach of implied covenant of good faith and fair dealing against the Joint Venture Partners, (4) tortious interference with contractual relations against the Joint Venture Partners and the Joint Venture Lenders, (5) in the alternative, unjust enrichment against the Joint Venture Partners and Joint Venture Lenders and (6) a declaratory judgment that the Acknowledgement Agreements between the Joint Venture Partners and CIBC are valid and enforceable contracts while the Side Letter Agreements, CX Side Letter Agreement and the Participation Agreement are invalid and unenforceable.

On January 31, 2020, the Defendants filed the Motion. The Motion seeks dismissal of all counts asserted by CIBC in the SAC.

## III. PARTIES' CONTENTIONS

### A. PERSONAL JURISDICTION

JH argues that the Court does not have personal jurisdiction over JH because (1) JH is a California corporation with its principal place of business in California, (2) the SAC does not allege that JH conducted activities that subject JH to Delaware's long arm statute and (3) CIBC does not allege that JH has any personnel or has a place of a business, telephone number, mailing

___

[51] *Id.* ¶ 105.

9

address or advertisements in Delaware. JH further argues that CIBC's purported basis for Delaware exercising personal jurisdiction—causing Delaware LLCs to make fraudulent transfers—is insufficient to form the basis of personal jurisdiction. Furthermore, JH argues that the SAC does not allege minimum contacts such that exercising personal jurisdiction comports with due process.

JH also contends that it is a necessary and indispensable party because it is the link between CIBC and the Joint Venture Partners. Joinder is not feasible because there is no personal jurisdiction, therefore the case should be dismissed.

CIBC claims that JH's allegations that JH amended the Joint Venture Agreements and managed the Joint Ventures are sufficient to establish personal jurisdiction in Delaware. CIBC then argues that JH's management of the Joint Ventures satisfies both Delaware's long arm statute and the *International Shoe* due process requirements.

CIBC asserts that JH is neither necessary nor indispensable because it is seeking to collect from the transferees, not JH.

### B. DAMAGES

JH argues that all of CIBC's claims fail because CIBC failed to establish damages and even if adequately pled, CIBC already seized the collateral.

CIBC counters by contending that the damages it seeks are overpayments that depleted JH's collateral.

### C. FRAUDULENT TRANSFERS

JH asserts that the fraudulent transfer claims must fail because there was no transfer from a debtor of the plaintiff. The Joint Ventures, not JH, made the distributions at issue. JH also argues that CIBC did not state facts showing actual intent to hinder, delay or defraud any creditor

10

and that CIBC did not reach the higher pleading standard for fraud claims. In addition, JH claims that there was no constructive fraud because the distributions were made to satisfy an antecedent debt and CIBC does not allege that JH was insolvent at the time the Joint Ventures made the distributions.

CIBC argues that the conduct of using the distributions to satisfy the antecedent debts is the wrongful act and that JH was insolvent because it defaulted on the Credit Agreement. CIBC contends that JH made the distributions by amending the Joint Venture Agreements with the Joint Venture Partners. Moreover, CIBC argues that it only needs to show that the Joint Venture Partners and Lenders received fraudulent transfers to recover from them.

### D. BREACH OF CONTRACT

JH argues that CIBC fails to allege a breach of the contract because the Side Letter Agreements and Participation Agreement do not "amend" the Joint Venture Agreements.

CIBC states that the Side Letter Agreements and Participation Agreement amend the Joint Venture Agreements by modifying distributions.

### E. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

JH claims that there is no breach of the implied covenant of good faith and fair dealing because the complained of conduct is covered by the Acknowledgement Agreements.

CIBC opposes JH's claim and provides that it has alleged a specific implied contractual obligation. Moreover, CIBC argues that, unless the Court finds that the subject terms are unambiguous, dismissal would be inappropriate at this early stage of the proceedings.

### F. TORTIOUS INTERFERENCE

JH contends that there is no claim for tortious interference against the Joint Venture Partners. JH notes that CIBC's only alleged intentional act with respect to the Joint Venture

11

Partners is receiving payments. The Met Defendants make a similar argument for CIBC's claims with respect to the Joint Venture Lenders.

CIBC claims that JH and the Met Defendants focus on the wrong conduct. CIBC asserts that the intentional act is not receiving the payments but entering agreements to modify the rate of distributions to deplete JH's collateral not receiving the payments.

## G. UNJUST ENRICHMENT

JH first argues that there can be no unjust enrichment claim because there is a contract between the parties. JH also contends that there is no impoverishment because any claim for damages are unripe.

CIBC states that the unjust enrichment claim is pled in the alternative. Accordingly, if the Court finds that there is no enforceable contract and that damages are ripe, then there would be a cognizable impoverishment.

## H. DECLARATORY JUDGMENT

JH assert that declaratory judgment is inappropriate because: (i) CIBC has not adequately alleged a contract breach or that it suffered damages; and (ii) the declaratory judgment is duplicative of CIBC's breach of contract claim.

CIBC claims that it has alleged a contract breach and suffered damages. In addition, CIBC argues that the declaratory judgment claim is not duplicative because it is meant to prevent future litigation if JH's obligations to CIBC conflict with JH's obligations under the Side Letter Agreements and the Participation Agreement.

## I. STAYING THIS ACTION

JH also moves to stay the proceedings, arguing this case should be stayed in favor or the Illinois Action because the Credit Agreement has a forum selection clause designating Illinois as

the appropriate forum. Furthermore, JH contends that the Court should stay the action under *McWane* because this action involves the same issues and substantially the same parties.

CIBC argues that: (i) the forum selection clause is unilateral and only limits JH to Illinois; and (ii) this action does not involve the same issues or same parties. CIBC notes that the Illinois Action involves a breach of contract claim based on the Credit Agreement against JH and non-party Borrowers while this action involves a claim for fraudulent transfers to deplete JH's collateral.

## IV. STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[52] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[53]

In considering a motion to dismiss under Rule 12(b)(6), the court generally may not consider matters outside the complaint.[54] However, documents that are integral to or incorporated by reference in the complaint may be considered.[55] "If . . . matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[56]

---

[52] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, No. 09C-09-136, 2010 WL 5825353, at *3 (Del. Super. Oct. 27, 2010).
[53] *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).
[54] Super. Ct. Civ. R. 12(b).
[55] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995).
[56] Super. Ct. Civ. R. 12(b).

On a motion to dismiss for lack of personal jurisdiction under Civil Rule 12(b)(2), the plaintiff bears the burden to present "a prima facie case establishing jurisdiction over a non-resident."[57] The "plaintiff[ ] must show that an exercise of personal jurisdiction . . . would be consistent with Delaware statutory law and federal constitutional law."[58] The Court may look beyond the pleadings to determine whether it has personal jurisdiction, viewing all factual inferences in the light most favorable to the plaintiff.[59]

## V.     DISCUSSION

### A. DELAWARE HAS PERSONAL JURISDICTION OVER JH.

Delaware courts apply a two-part analysis to determine whether personal jurisdiction exists over nonresident defendants. "First, the Court must determine whether Delaware's long-arm statute is applicable. Second, the Court must determine whether subjecting a nonresident defendant to jurisdiction would violate due process."[60]

Delaware's long-arm statute permits the exercise of personal jurisdiction over a nonresident defendant in a cause of action arising from the following specifically enumerated acts required of that defendant:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

---

[57] *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 974 (Del. Ch. 2000).
[58] *Chandler v. Ciccoricco*, 2003 WL 21040185 at *8 (Del. Ch. May 5, 2003).
[59] *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972 at *3 (Del. Ch. Mar. 3, 2005).
[60] *Id.* (citing *Matthew v. Fläkt Woods Group SA*, 56 A.3d 1023, 1027 (Del. 2012)). *See also Sessoms v. Richmond*, 2017 WL 6343548, at *2 (Del. Super. Dec. 8, 2017); *see also Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 1991 WL 190313, at *1 (Del. Super. Sept. 10, 1991).

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.[61]

To establish specific jurisdiction, CIBC must show that "(1) the nonresident transacted some sort of business in the state; and (2) the claim being asserted arose out of that specific transaction."[62] As such, CIBC must establish a nexus between its claims and the nonresident's forum-related conduct.[63]

### i.    *JH transacted business in Delaware, satisfying Section 3104(c).*

CIBC argues that Delaware has personal jurisdiction over JH under 10 Del. C. § 3104(c)(1). Section 3104(c)(1) is a "single act statute" that enables the Court to exercise jurisdiction over nonresidents based on a single act or transaction engaged in by the nonresident within the state.[64] The plaintiff's cause of action, however, must have a nexus with the forum-related contact, *i.e.*, the claim must arise from at least one act that legally constitutes the transacting of business in Delaware.[65] Furthermore, an aggregate of contacts may satisfy the Section 3104(c) requirements.[66]

In *RJ Associates, Inc. v. Health Payors Organization Limited Partnership*, one of the limited partners of a Delaware limited partnership alleged that the other limited partner and the general partner breached contractual and fiduciary duties.[67] The Court of

---

[61] 10 *Del. C.* § 3104(c).
[62] *Maloney-Refaie v. Bridge at School, Inc.*, 958 A.2d 881, 878 (Del. Ch. 2008); *EBP Lifestyle Brands Holdings, Inc. v. Boulbain*, 2017 WL 3328363, at *3 (Del. Ch. Aug. 4, 2017).
[63] *See Mobile Diagnostic*, 972 A.2d at 804.
[64] *See Eudaily v. Harmon*, 420 A.2d 1175, 1180 (Del. 1980).
[65] *See RJ Assoc.'s, Inc. v. Health Payors' Org. Ltd. P'ship.*, 1999 WL 550350 at *4 (Del. Ch. July 16, 1999).
[66] *See id.* at *5 ("In the aggregate these allegations are sufficient to establish (for personal jurisdiction purposes) that [Defendant] transacted business in Delaware and that RJA's claims . . . arise from these alleged transactions").
[67] *Id.* at *1.

15

Chancery held that it could exercise personal jurisdiction over the other limited partner—

an Ohio corporation with its principal place of business in Ohio. The Court of Chancery

noted that (i) the general partner had formed the partnership and had "at least indirect

control" over the general partner, and (ii) the plaintiff alleged that the limited partner

unilaterally caused the Partnership Agreement to be amended to the plaintiff's

detriment.[68]

Similarly, CIBC alleges sufficient contacts with Delaware to satisfy the Section

3104(c) requirements. CIBC contends that JH participated in the formation and solely

managed the Joint Ventures.[69] CIBC alleges that JH also amended the Joint Venture

Agreements to decrease its distributions and increase distributions to the Joint Venture

Partners.[70] These contacts, "in aggregate" are sufficient for the Court to find that JH

transacted business in Delaware.[71] Furthermore, CIBC bases its claim on the Joint

Venture's distributions.[72] Therefore, this claim has a nexus with Delaware.[73]

### ii. *Exercising personal jurisdiction over JH comports with due process.*

Delaware may exercise jurisdiction over JH only if JH has "certain minimum

contacts with [the forum] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"[74] The Court must focus on the

relationship between JH, Delaware and the litigation to determine whether a particular

exercise of state court jurisdiction is consistent with due process.[75] The Court notes that a

---

[68] *Id.* at *1, *5.
[69] Pl.'s Ex.'s A and B.
[70] SAC ¶¶ 74-91.
[71] *RJ Assoc.'s*, 1999 WL 550350 at *5 (Del Ch. July 16, 1999).
[72] Pl.'s Response in Opp. To Defs.' Mots. To Dismiss Pl.'s Second Amend. Compl. or in the Altern., to Stay. 4.
[73] *RJ Assoc.'s*, 1999 WL 550350 at *4 (Del Ch. July 16, 1999).
[74] *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945).
[75] *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

single contact between JH and Delaware may be sufficient, especially when there is a nexus between the contact and the cause of action. The Court must ask whether the defendant should have reasonably anticipated that its actions "might result in the forum state asserting personal jurisdiction over him in order to adjudicate disputes arising from those actions."[76]

The Court of Chancery held that the *RJ Associates* defendant had sufficient contacts when it took an active role in establishing a Delaware partnership, owned an interest in the partnership's general partner, received significant cash flow distributions from the partnership, benefitted directly from Delaware law by operating the partnership's provider network, controlling the partnership's management, causing the partnership agreement to be amended under Delaware law to change cash flow distributions and agreeing to a Delaware choice of law provision in its partnership agreement.[77]

Similarly, JH took an active role in establishing the Joint Ventures (which are Delaware LLCs); received distributions through the Joint Venture Agreements; managed the Joint Ventures; and amended the Joint Venture Agreements to change cash flow distributions.[78] Furthermore, the parties to the Joint Venture Agreements agreed to be governed by Delaware law.[79] Therefore, exercising personal jurisdiction over JH comports with due process.

---

[76] *In re USA Cafes, L.P. Litigation*, 600 A.2d 43, 50-51 (Del. Ch. 1991).
[77] *RJ Assoc.'s*, 1999 WL 550350 at *6 (Del. Ch. July 16, 1999).
[78] Pl.'s Ex.'s A and B; SAC ¶¶ 74-91.
[79] *See e.g.* Pl. Ex. B § 16.3.

17

## B. CIBC ADEQUATELY PLEAD DAMAGES

JH argues that CIBC did not adequately plead damages because CIBC collected the collateral that secured the loans under the Credit Agreement and there is no allegation that the collateral does not satisfy the loan amount.[80] CIBC, however, alleges that JH's transfers depleted CIBC's collateral in excess of $6,582,193.69.[81] CIBC furthermore, contends that it is seeking $172,500,000.000, interest, attorneys' fees, costs and expenses after it accelerated amounts due under the Credit Agreement because JH and the non-party borrowers defaulted on the loan.[82] The Court therefore finds that CIBC has adequately pled damages in excess of the collateral it already possesses.

## C. CIBC'S FRAUDULENT TRANSFER CLAIMS AGAINST JH AND THE JOINT VENTURE PARTNERS (COUNTS I AND II)

CIBC's Counts I and II allege actual fraudulent transfers against JH and the Joint Venture Partners.[83] Chapter 13 of Title 6 controls.[84] Section 1304 relates to fraudulent transfers as to present and future creditors. Section 1304(a) provides:

> Transfers fraudulent as to present and future creditors.
>
> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
>>
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

---

[80] JH Mot. 16.
[81] SAC ¶ 24.
[82] *Id.* ¶¶ 104-05.
[83] *Id.* ¶¶ 110, 124.
[84] 6 *Del. C.* § 1301, *et seq.*

b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[85]

First, JH argues that the Joint Venture Partners did not receive a transfer from CIBC's "debtor" because they received distributions from the Joint Ventures who are not CIBC's debtors.[86] Second, JH argues that CIBC states conclusory allegations and does not state sufficient facts to demonstrate JH's intent to defraud or that JH was insolvent at the time of transfer.

The Court notes that JH only focuses on one type of transfer—the transfer of funds—and not JH's transfer of its interest in distributions from the Portfolios to the Joint Venture Partners made without consideration.[87] The Court finds that, by definition, this type of transfer supports a claim under Section 1304. In addition, the Court finds that CIBC has pled enough non-conclusory facts to satisfy Civil Rule 9.

### i. The Transfer of an Interest in the Distributions constitutes a Transfer.

Transfer is defined in Chapter 6. Under Section 1301(12), "Transfer" means

…every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance but excludes, without limitation, any disposition of or parting with property or an interest in property described in paragraph (2) of this section.[88]

As defined, therefore, "Transfer" is broad is scope and meaning.

CIBC pled a transfer. The Court notes that. reading SAC Paragraphs 112 and 113 together, CIBC alleged a "transfer" of an interest in property that satisfies Section 1304.

---

[85] 6 *Del. C.* § 1304(1).
[86] JH Mot. 17.
[87] SAC at ¶¶ 112-13.
[88] 6 *Del. C.* š 1301(12).

19

CIBC alleges the transfer of actual funds or "a portion of its interest in distributions" made by JH when it agreed, under the CX Side Letter Agreement and the Participation Agreement, to transfer its interest in those funds.[89]

#### ii. Whether CIBC has plead facts that indicate actual intent to hinder, delay or defraud any creditor of the debtor.

CIBC alleges that JH committed an actual fraudulent transfer under Section 1304(a)(1).[90] Claims for actual fraudulent transfer under Section 1304(a)(1) "must meet the heightened pleading standard of Superior Court Civil Rule 9(b)."[91] Under Rule 9(b), CIBC must include "specific supporting facts describing the circumstances of the transfer."[92] Allegations based "upon information and belief" are not enough to satisfy Rule 9(b)'s requirements.[93]

CIBC's allegations satisfy Rule 9(b)'s particularity requirements. Under Section 1304(a), CIBC must plead JH actual intended to hinder, delay, or defraud CIBC.[94] At first reading, CIBC's allegations seem conclusory;[95] however, Section 1304(b) provides otherwise.

One of the factors that may be given consideration when determining actual intent is whether the transfer was to an insider.[96] Under Section 1301(7)(d), a person in control of a corporation or a partnership is an insider.[97] CIBC alleges that JH's principals have interests in the Joint Venture Partners. For example, Jacobsen was a "Class A-2

---

[89] *Id.*

[90] *See* SAC § 112 ("JH transferred funds to the Joint Venture Partners with the intent to hinder, delay or defraud Plaintiff . . .")

[91] *Ki-Poong Lee v. So*, 2016 WL 6806247 at * 3 (Del. Super. Nov. 17, 2016).

[92] *Id.* at *4.

[93] *See id.*

[94] *See* 6 *Del. C.* § 1304(a).

[95] SAC ¶ 120.

[96] *See* 6 *Del. C.* § 1304(b)(1).

[97] *See* 6 *Del. C.* § 1301(7)(b)(3) and (c)(5).

Representative of Met Management" and Met Management required his vote for all major decisions.[98] CIBC also alleges that Kravetz is a principal and managing member of Pacific Capital Holdings, which is a member of the Joint Venture Partners, COCD and CX.[99] CIBC also alleges that Kravetz was a manager for Met Holdings.[100] These relationships, at this stage of the proceedings, satisfy "insider" statutory definition under Section 1301(1) and, therefore, support CIBC's allegation that the Joint Venture Partners are JH's "insiders."[101]

In addition, CIBC states that JH failed to disclose the transfer. Another factor to consider when determining actual intent is whether the transfer was concealed.[102] Factual allegations regarding concealment and insider status are enough to satisfy Civil Rule 9.

CIBC alleges sufficient facts that show the JH was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.[103] Under Section 1302(b), a "debtor who is generally not paying debts as they become due is presumed to be insolvent."[104] CIBC accelerated amounts due and demanded repayment which has not been repaid because JH defaulted on CIBC's loans,.[105] Accordingly, the Court finds that CIBC alleged sufficient facts to show that the debtor was insolvent or became insolvent shortly after the transfer was made.

Finally, CIBC also alleges sufficient facts to show that JH retained possession or control of the property after the transfer. CIBC alleges that JH, by virtue of its ownership

---

[98] SAC ¶ 4.
[99] *Id*. ¶ 5.
[100] *Id.*
[101] 6 *Del. C*. § 1304(d)(1).
[102] 6 *Del. C*. § 1304(d)(3).
[103] *See* 6 Del. C. § 1304(b)(9).
[104] 6 Del. C. § 1302(b).
[105] SAC ¶¶ 104, 116-118.

interest and control in the Joint Ventures and Joint Venture Lenders, retained possession or control of the property transferred even after the transfers.[106] CIBC alleges that JH formed the Joint Ventures with the Joint Venture Parties and made distributions according to the side agreements to itself and the other Joint Venture Parties.[107] As such, CIBC plead specific facts with sufficient particularity to support the allegation that JH retained possession or control of the property after the transfer.

The Court finds that CIBC has alleged facts to satisfy the statute as to actual intent. Moreover, CIBC alleges with sufficient particularity that JH became insolvent shortly after the transfers and that JH retained control of the distributions after the transfer. The Court finds that allegations of actual intent are sufficient for CIBC's fraudulent transfer claim to survive. Furthermore, CIBC correctly states it does not need to plead wrongful intent with regards to the fraudulent transferees.[108] CIBC must merely allege that there was a fraudulent transfer to recover fraudulently transferred funds from the Joint Venture Partners.[109]

### iii.    CIBC pled the elements for constructive fraudulent transfer

Section 1305(a) provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange.

The Court finds that CIBC pled the elements of a constructive fraudulent transfer. CIBC pled that the side agreements to change the Joint Venture's distribution methods

---

[106] *Id.* ¶ 119.
[107] *Id.* ¶ 53, 75-76.
[108] *See August v. August*, 2009 WL 458778 at *10 (Del. Ch. Feb. 20, 2009).
[109] *See Dodge v. Wilmington Trust Co.*, 1995 WL 106380 (Del. Ch. Feb. 3, 1995) ("Once a creditor has sown a transfer was fraudulent, it can recover the property from the initial transferee or any subsequent transferee").

22

constituted a "transfer or obligation incurred by a debtor." Unlike claims for actual fraud, a claim for constructive fraud is "governed by Civil Procedure Rule 8(a)."[110]

To survive dismissal under Civil Rule 12(b)(6), CIBC must allege facts sufficient to show that (i) JH was insolvent or made insolvent by the transfer and (ii) JH did not receive reasonably equivalent value.[111]

### a. JH was insolvent or made insolvent by the transfer

CIBC alleges sufficient facts to show that JH was insolvent or made insolvent by the transfer. Under Section 1302(b), a "debtor who is generally not paying debts as they become due is presumed to be insolvent."[112] In this case, CIBC alleges that JH owes CIBC a debt of at least $172,500,000 because CIBC accelerated amounts JH owed under the Credit Agreement.[113] CIBC accelerated these amounts because of JH's defaults that were the subject of the Illinois litigation.[114] JH has not paid these debts and therefore, according to CIBC, JH may be presumed insolvent.

Section 1305 provides that a transfer made without a reasonable equivalent exchange for value is fraudulent if the debtor was insolvent at that time or the debtor became insolvent because of the transfer or obligation.[115] In this case, CIBC admits that "most or all of the overpayments were made before [CIBC] accelerated the loan."[116] CIBC relies upon language suggesting that DUFTA anticipates transfers made prior to

---

[110] *Ki-Poong Lee*, 2016 WL 680247 at *4 (Del. Super. Nov. 17, 2016).
[111] *See In re Coca-Cola Enterprises, Inc.*, 2007 WL 3122370 at fn. 28 ("If a complaint were held sufficient simply because it restates the legal elements of a particular cause of action, Rule 8(a) would be rendered meaningless. . . . [P]laintiffs must allege *facts* sufficient to show that the legal elements of a claim have been satisfied").; *see Ki-Poong Lee*, 2016 WL 680247 at *6 (Describing elements of § 1305(a) claim).
[112] 6 *Del. C.* § 1302(b).
[113] SAC ¶ 105.
[114] *Id*. ¶ 104.
[115] 6 *Del. C.* § 1305(a).
[116] Pl.'s Response in Opp. To Defs.' Mots. To Dismiss Pl.'s Second Amend. Compl. or in the Altern., to Stay. at 18.

23

the vesting of a creditor's claim.[117]  *Seiden*, however, involves an actual fraudulent

inducement claim under Section 1304(a)(2) which is about fraudulent transfers with

respect to present and future creditors.  Section 1305(a), by contrast, only applies to

present creditors.  At this stage, however, CIBC has alleged that the transfers under the

Side Agreement rendered JH unable to meet its obligations.

### b.  CIBC has pled that JH did not receive fair consideration for the transfers.

JH argues that value is given if "in exchange for the transfer or obligation . . . an

antecedent debt is secured or satisfied."[118]  JH argues that the payments were required

under the Side Agreements and therefore, the payments satisfied an antecedent debt.

CIBC alleges, however, that the Side Agreements are the fraudulent transfer and alleges

that JH entered the Side Agreement without consideration.  Under the applicable legal

standard, the Court finds that CIBC pled that JH did not receive fair consideration for the

transfers.  Discovery should resolve this issue.

### D.  CIBC'S FRAUDULENT TRANSFER CLAIMS AGAINST THE JOINT VENTURE LENDERS (COUNTS III AND IV)

#### i.       CIBC's properly pled actual fraudulent transfer claim against the Joint Venture Lenders

Count III against the Joint Venture Lenders survives for the same reason that

Count I survive. Accepting a fraudulently transferred asset "is all that is required to create

transferee liability" under DUFTA.[119]  If CIBC can prove that a fraudulent transfer

occurred, CIBC may recover fraudulently transferred funds from the Joint Venture

---

[117] *See id.* (citing *Seiden v. Shu Kaneko*, 2015 WL 7289338 at \*14 (Del. Ch. Nov. 3, 2015)).
[118] 6 *Del. C.* § 1303(a).
[119] *August,* 2009 WL 458778 at \*12 (Del. Ch. Feb. 20, 2009).

Lenders.[120]  Therefore, CIBC actual fraudulent transfer claim survives against the Joint Venture Lenders.

### ii. CIBC's properly pled a constructive fraudulent transfer claim against the Joint Venture Lender.

The Court finds that CIBC's constructive fraudulent transfer claim against the Joint Venture Lender survive for the same reasons the claims survives with respect to JH and the Joint Venture Partners.

## E. CIBC'S BREACH OF CONTRACT CLAIMS AGAINST THE JOINT VENTURE PARTNERS (COUNT V)

To survive a motion to dismiss for failure to state a breach of contract claim, CIBC must demonstrate: "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."[121]  JH does not contest that a contract exists; but contends that CIBC failed to adequately plead breach or damages.[122]

The contracts at issue are the Acknowledgment Agreements between CIBC and the Joint Venture Partners.  Under those Acknowledgement Agreements, the Joint Venture Partners agreed not to amend their Joint Venture Agreements without CIBC's written consent.[123]

### i. CIBC has adequately pled that the Joint Venture Partners breached the Joint Venture Agreements by amending the Joint Venture Agreements.

Accepting well-pled allegations as true and drawing all reasonable inferences in favor of the plaintiff, CIBC pled sufficient facts to show a breach of the

---

[120] *See infra* Section D(i) and Section D(ii).
[121] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).
[122] JH Mot. 23.
[123] SAC ¶ 72.

Acknowledgement Agreements. Under the Acknowledgement Agreements, the Joint Venture Partners agreed not to amend their Joint Venture Agreements without CIBC's written consent.[124] The Joint Venture Partners also represented that there were no amendments, modifications or additions to the LLC Agreement.[125] Under the JH Met Joint Venture Agreement, the Joint Venture would make distributions according to actual net collections generated.[126] The COCD Side Agreement allows for the Joint Venture to make distributions based on Projected Net Collections to the Joint Venture Lenders via JH and COCD.[127] These changes in distribution calculation function to amend the Joint Venture Agreement and therefore CICB stated sufficient facts to show a breach of the Acknowledgement Agreement with respect to JH Met.

On the other hand, the CX Side Letter Agreement states that it is being entered in connection with the JH CX Joint Venture.[128] The CX Side Letter Agreement permits Met Fund IIIA to exercise a put requiring JH to buy the CX Asset Loan at a rate of 30% if Met Fund IIIA does not earn an internal rate of return of 30%.[129] Although this may alter "the economic interests and benefits of the members as set forth in the Joint Venture Agreement," CIBC does not allege any particular facts showing that this is a modification of the Joint Venture Agreement. Therefore, the Court grants the Motion with respect to the CX Side Letter Agreement.

Finally Met Fund IIIA and JH executed the Participation Agreement, where JH sold a portion of the collections such that Met Fund IIIA would be entitled to 74% of the

---

[124] *See id.*
[125] *See id.* Exs. G, H.
[126] *See id.* Ex. A §§ 8.1, 8.2.
[127] *See id.* Ex. I.
[128] *Id.* Ex. L.
[129] *Id.* ¶ 85, Ex. L.

distributions from the JH Met Joint Venture.[130] Changing the distribution percentages under the Joint Venture Agreement is an amendment, modification or addition to the Joint Venture Agreement and therefore, constitutes a breach of the Acknowledgement Agreement by the Joint Venture Partner Met Fund IIIA.

Therefore, CIBC pleaded sufficient facts to establish a breach of the Acknowledgement Agreements with respect to the COCD Side Agreement and the Participation Agreement but not the CX Side Letter Agreement.

### ii. CIBC properly alleged damages from the breaches.

CIBC properly alleged damages from the breaches. CIBC alleges that the distribution percentage adjustment under the Participation Agreement and distribution based on projected collections resulted in "substantial overpayments" to Joint Venture Partners.[131] For example, CIBC alleges that Met Fund IIIA received at least $1.919 million in distributions while the agreement only allocated $1.179 million to Met Fund IIIA.[132] Therefore, CIBC pled facts that would support a finding of damages.

### F. CIBC's CLAIM OF BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST THE JOINT VENTURE PARTNERS (COUNT VI)

"The implied covenant of good faith and fair dealing inheres in every contract . . . and 'requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.'"[133] It is best understood "as a way of implying

---

[130] *Id.* ¶ 88, Ex. M.
[131] *Id.* ¶¶ 92-93.
[132] *Id.* ¶ 94.
[133] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126 (Del. Ch. 2009) (citing *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).

terms in the agreement."[134]  The Court can only imply terms where it is "clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe . . . had they though to negotiate with respect to the matter."[135]

The covenant "operates only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer."[136]  Therefore, before invoking the covenant, the Court must "determine whether there is a gap that needs to be filled."[137]  If the contract expressly covers a particular issue, then "the implied covenant will not apply."[138]  When "a contract confers discretion on one party, the implied covenant of good faith and fair dealing requires" that discretion be used reasonably and in good faith.[139]  "But '[a] party does not act in bad faith by relying on contract provisions for which that party bargained where doing so simply limits advantages to another party.'"[140]  Furthermore, "an implied covenant claim requires factual allegations that are different from those underlying any accompanying breach-of-contract claims."[141]  "Otherwise, the implied covenant claim . . . is duplicative and not viable."[142]

For CIBC's claim that the Joint Venture Partners breached the implied covenant of good faith and fair dealing to survive, CIBC must show (i) a specific implied contractual obligation, (ii) a breach of that obligation by the defendant and (iii) resulting

---

[134] *Dunlap*, 878 A.2d at 441 (Del. 2005).
[135] *Airborne Health, Inc.*, 984 A.2d at 146 (Del. Ch. 2009).
[136] *Id.*
[137] *Allen*, 113 A.3d at 183 (Del. Ch. 2014).
[138] *Id.*
[139] *Winshall v. Viacom Intern., Inc.*, 55 A.3d 629, 638 (Del. Ch. 2011).
[140] *Id.* (citing *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010)).
[141] *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *13 (Del. Super. Aug. 7, 2019).
[142] *Id.*

damage to the plaintiff.[143]  In this case, CIBC pled that the Joint Venture Partners agreed not to take any actions that would impair or otherwise dissipate CIBC's collateral in the Portfolios or amend their Joint Venture Agreements without CIBC's written consent.[144]

CIBC did not plead its breach of the implied covenant of good faith and fair dealing claim in the alternative.  If the complained about conduct is contractual then it is not an implied obligation but an explicit one.   Because the Court is not dismissing the breach of contract claim, the Court will dismiss this implied covenant of good faith and fair dealing claim.  The Court will allow CIBC twenty days from the date of this opinion to try to amend the SAC as to the breach of the implied covenant of good faith and fair dealing claim as to the CX Side Letter Agreement.

## G.  CIBC'S CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST THE JOINT VENTURE PARTNERS (COUNT VII)

CIBC does not plead sufficient facts to show that the Joint Venture Partners induced JH to breach the Credit Agreement and Security Agreement by entering into side agreements that interfered with CIBC's rights to its collateral under the agreements. CIBC must allege facts showing "(1) a valid contract, (2) about which the defendants have knowledge, (3) an intentional act by defendants that is a significant factor in causing the breach of the contract, (4) done without justification and (5) which causes injury."[145] First, the Credit Agreement and Security Agreement between CIBC and JH are valid enforceable contracts.[146]  Second, the Joint Venture Partners knew about the

---

[143] *NAMA Holdings, LLC v. Related WMC LLC*, 2014 WL 6436647 at *
[144] SAC ¶ 155.
[145] *Great American Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219 at *9 (Del. Ch. Jan. 29, 2010).
[146] SAC ¶ 160.

29

agreements.[147] Third, there are no facts suggesting justification. And finally, the CIBC suffered injury from JH's breach detailed in the Illinois Litigation.[148]

However, CIBC only pleads that the Joint Venture Partners actions were intentional and in bad faith in a conclusory fashion. The SAC states "[t]he actions of the Joint Venture Partners were intentional, in bad faith, and without justification."[149] To establish tortious interference with contract rights, "the non-breaching party must show that the . . . defendant 'was not pursuing in good faith the legitimate profit seeking activities of [its] affiliated enterprise' that was a party to the contract."[150] CIBC therefore fails to allege facts that show the Joint Venture Partners' bad faith; and the Court will dismiss Count VII.

### H. CIBC'S TORTIOUS INTERFERENCE CLAIM AGAINST THE JOINT VENTURE LENDERS (COUNT VIII)

The Court dismisses Count VIII for the same reason that it dismissed Count VII. To survive the motion to dismiss, CIBC must allege facts that show the Joint Venture Lenders were not acting in good faith to pursue greater profits.[151] CIBC only alleges that "[o]n information and belief, the Joint Venture Lenders intentionally and improperly induced or otherwise caused JH to breach the Credit Agreement."[152] This allegation is conclusory and the Court will dismiss Count VIII.

---

[147] *Id.* ¶ 161.
[148] *Id.* ¶¶ 100-108.
[149] *Id.* ¶ 165.
[150] *Bhole, Inc. v. Shore Investments, Inc.*, 67 A.3d 444, 453 (Del. 2013).
[151] *See id.*
[152] SAC ¶ 170.

**I. CIBC's Unjust Enrichment Claim (pled in the alternative) against the Joint Venture Partners (Count IX)**

CIBC pleads Count IX in the alternative "in the event the Court determines that no valid and binding contracts exist between CIBC and the Joint Venture Partners."[153] To state a claim for unjust enrichment, CIBC must plead "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law."[154] JH only argues that CIBC has not alleged an impoverishment because "any claim for damages is not ripe."[155] CIBC, however, alleges facts showing that the Joint Venture Partners benefitted from alleged overpayments under the Side Agreements.[156] Therefore, the Court will not dismiss Count IX at this stage of the case.

**J. CIBC's Unjust Enrichment Claim (Pled in the Alternative) against the Joint Venture Lenders (Count X)**

This claim survives for the same reason that CIBC's unjust enrichment claim survives against the Joint Venture Partners. CIBC pled facts that showed how the Joint Venture Lenders benefitted from overpayments.[157] Therefore, the unjust enrichment claim against the Joint Venture Lenders survives.

**K. CIBC's Declaratory Judgment Claim (XI)**

JH argues that Count XI should be dismissed for two reasons: (1) CIBC did not adequately allege a breach occurred or that it suffered any damages and (2) the declaratory judgment is duplicative of the contract breach claim.[158] CIBC adequately

---

[153] Pl.'s Response in Opp. To Defs.' Mots. To Dismiss Pl.'s Second Amend. Compl. or in the Altern., to Stay. 28.
[154] *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1056 (Del. Super. 2001).
[155] JH. Mot. 29.
[156] SAC ¶¶ 75-91.
[157] *See e.g. id.* ¶ 88, Ex. M (the Participation Agreement).
[158] JH Mot. 30.

alleged a contract breach, at least with respect to the COCD Side Letter Agreement and the Participation Agreement.[159]

The declaratory claim is not duplicative of claim for contract breach. CIBC seeks to repair harm caused by the contractual breach caused by the side agreements while the claim for declaratory relief is to prevent future harm caused by performing those agreements. "The mere availability of another adequate remedy does not in and of itself weigh against the giving of declaratory relief."[160] The real test is "whether the declaratory judgment action would serve a useful purpose."[161] Declaratory relief was appropriate in *Clemente* because "resolving the parties' obligations under the contract could affect their present behavior and have present consequences."[162] In this case, declaratory relief would be appropriate to determine the rights and obligations of JH, the Joint Venture Partners and Joint Venture Lenders to avoid future litigation that may arise if the Court determines that performing those agreements is a breach of contract with respect to CIBC. Therefore, the claim is not duplicative and should not be dismissed.

## L. THE COURT WILL NOT STAY THIS ACTION.

The Court will not stay this action. First, the forum selection is binding only upon JH and the Borrowers. A court should honor the parties' contract and enforce the clause "where contracting parties have expressly agreed upon a legally enforceable forum selection clause."[163] Here, however, there is no forum selection clause to enforce against CIBC.

---

[159] *See infra* Section V(F).
[160] *Clemente v. Greyhound Corp.*, 155 A.2d 316, 321 (Del. Super. 1959).
[161] *Id.*
[162] *Del. State Univ. Student Housing Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 375 (D. Del. 2008) (distinguishing *Clemente*).
[163] *Ingres Corp. v. CA, Inc*, 8 A.3d 1143, 1145 (Del. 2010).

The Court now turns to the "default rule of common law," under *McWane*. Under the *McWane* three-factor test, the Court considers whether (i) there is a prior action pending elsewhere; (ii) in a court capable of doing prompt and complete justice; (iii) involving the same parties and the same issues.[164] When all three criteria are met, there is "a strong preference for the litigation of a dispute in the forum in which the first action was filed."[165] Nevertheless, a Delaware court may decline to stay a case if "Delaware has too vested an interest" in the matter to turn away.[166] For example, a Delaware court may decline to stay a case if there is no clear evidence of proper service of process or litigation progress in the foreign forum.[167]

JH cannot satisfy the *McWane* three-factor test. The Illinois Action does not involve the same parties and issues as this action. CIBC filed the Illinois Action against JH and non-party Borrowers for breaching the Credit Agreement. By contrast, this action was filed against JH, the Joint Venture Partners, and the Joint Venture Lenders to recover for alleged fraudulent transfers under the Side Agreements and the Participation Agreement. Therefore, this case does not arise "out of the same operative nucleus of facts" and the Court should not stay this action.[168] As this case does not involve the same parties and same issues, the Court will not stay the matter under *McWane*.

---

[164] *See LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015).
[165] *Id.* (Internal citations omitted).
[166] *NRG Barriers, Inc. v. Jelin*, 1996 WL 377014, at *6 (Del. Ch. Jul. 1, 1996).
[167] *See id.* (holding that only Delaware could do prompt and complete justice when there was no evidence of proper service of process or progress in the litigation in the foreign court).
[168] *Lisa, S.A.*, 993 A.2d at 1048 (Del. 2010).

## VI. CONCLUSION

The Court **GRANTS** the Motion with respect to the CX Side Letter Agreement in Count V, and as to Counts VI , VII and VIII.  The Court otherwise **DENIES** the Motion.

Furthermore, the Court **DENIES** the request to stay the case.

Dated: June 2, 2021
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc: File&ServeXpress

34